NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

11-634

STATE OF LOUISIANA

VERSUS

V. L. G.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 28438-09
HONORABLE ROBERT LANE WYATT, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

BILLY HOWARD EZELL
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Jimmie C. Peters, Billy Howard Ezell, and Shannon J. Gremillion, Judges.

CONVICTIONS AFFIRMED; SENTENCE VACATED; REMANDED FOR RESENTENCING WITH INSTRUCTIONS.

John Foster DeRosier
Fourteenth Judicial District Court District Attorney
Carla Sue Sigler
Assistant District Attorney
P. O. Box 3206
Lake Charles, LA 70602-3206
(337) 437-3400
Counsel for Plaintiff/Appellee:
State of Louisiana

Catherine Lynn Bartholomew
303 S. Broad Street
New Orleans, LA 70119
(504) 822-1359
Counsel for Defendant/Appellant:
V. L. G.

**Karen C. McLellan**
**The Gray Law Firm**
**P. O. Box 1467**
**Lake Charles, LA 70602-1467**
**(337) 494-0694**
**Counsel for Plaintiff/Appellee:**
**State of Louisiana**

**Ezell, Judge.**

The Defendant, V.L.G., was charged in an indictment filed on August 20, 2009, with two counts of aggravated rape, in violation of La.R.S. 14:42, and one count of aggravated incest, in violation of La.R.S. 14:78.1. The Defendant entered a plea of not guilty on August 31, 2009.

Trial by jury commenced on January 12, 2010, and the Defendant was found guilty as charged on January 16, 2010. The Defendant filed a motion for post-verdict judgment of acquittal and motion for new trial on February 3, 2010. On February 5, 2010, the trial court denied the motion for post-verdict judgment of acquittal and granted the motion for new trial to serve the ends of justice.

The State sought supervisory review of the trial court's grant of the motion for new trial. In *State v.* [*V.L.G.*], an unpublished writ ruling bearing docket number 10-299 (La.App. 3 Cir. 4/27/10), this court denied the State's writ application, stating the following:

> **WRIT DENIED:** The State has failed to establish that the trial court committed an error of law when it granted Defendant's motion for a new trial based on La.Code Crim.P. art. 851(5). *See also* La.Code Crim.P. art 858. Accordingly, the trial judge did not misuse his authority by granting the motion for a new trial. *State v. Miller*, 05-1111 (La. 3/10/06), 923 So.2d 625. Moreover, the grant of a motion for new trial to serve the ends of justice is not subject to review upon appeal. *State v. Bell*, 04-1183 (La.App. 3 Cir. 3/2/05), 896 So.2d 1236, *writ denied*, 05-828 (La. 11/28/05), 916 So.2d 143.

In *State v.* [*V.G.*], 10-1231 (La. 10/8/10), 45 So.3d 612, the supreme court found the grant or denial of a new trial to serve the ends of justice presented a question of law subject to appellate review for an abuse of discretion. The supreme court then reversed the trial court's ruling granting a new trial. *Id.*

On October 29, 2010, the Defendant filed a "MOTION TO RECONSIDER THE DENIAL OF NEW TRIAL PURSUANT TO LA C.Cr.P. Art. 851 (1), AND

MOTION FOR NEW TRIAL PURSUANT TO LA C.Cr.P. Art. 851 (3)." The motion was set for hearing on January 5, 2011. The State filed a supervisory writ with this court contending the trial court erred in setting a hearing on the motion. This court, in in *State v.* [*V.L.G.*], an unpublished writ ruling bearing docket number 10-1425 (La.App. 3 Cir. 12/17/10), reversed the trial court's ruling granting a hearing on the Defendant's untimely motion for new trial and remanded the matter for sentencing. The supreme court denied writs in *State v.* [*V.L.G.*] 11-34 (La. 1/6/11), 53 So.3d 465.

On January 7, 2011, the Defendant was sentenced to life imprisonment on each count of aggravated rape. He was then sentenced to ten years at hard labor for aggravated incest. All sentences were ordered to be served concurrently. A motion to reconsider sentence was filed on February 3, 2011, and was subsequently denied.

The Defendant also filed a motion for appeal on February 3, 2011. The motion was subsequently granted. The Defendant is now before this court asserting eight assignments of error. He contends the evidence was insufficient to convict him of aggravated rape; the State's failure to timely disclose impeachment evidence caused irreparable harm; defense counsel was ineffective for failing to request a mistrial following the delayed presentation of *Brady* material; the testimony of Dr. Earl Soileau exceeded the bounds of admissible Child Sexual Abuse Accommodation Syndrome; redacted phone recordings were not admissible; this court erred in reversing the trial court's granting of a hearing on his second request for a new trial; the trial court erred in denying the motion for arrest of judgment based on grounds that a non-unanimous jury verdict is unconstitutional; and his life sentences are excessive.

2

## FACTS

D.C.'s date of birth is September 25, 1994. D.C. testified that her mother was once married to the Defendant. She further testified that when she was eight years old, the Defendant exposed his penis to her and told her to pretend it was a snow cone or ice cream cone. D.C. then performed oral sex on the Defendant. D.C. testified that the Defendant told her not to tell anyone about the incident. D.C. further testified that after that incident, "it pretty much happened like every day."

When D.C. was ten or eleven years old, the Defendant began having vaginal sex with her. D.C. was questioned about the events as follows:

Q     Do you remember him telling you anything during this?

A     No.

Q     Did he ever threaten you?

A     Yes.

Q     What did he threaten you with, [D.C.]?

A     He told me if I ever told anybody that he would hurt me, or he would kill me.

Q     Do you feel like he could really do that?

A     Yeah.

D.C. testified that the Defendant had vaginal sex with her every day or every other day.

The Defendant and D.C.'s mother were divorced in October 2007. In 2007, D.C. went to live with the Defendant. While she lived there, "[t]he same thing" happened.

D.C. testified that the abuse occurred over spring break in March 2009. At that time, she performed oral sex on the Defendant.

3

D.C. later testified that the Defendant said if she told anyone he would hurt her. She further testified as follows:

Q        Would he make any other kind of comments?

A        He would just be like don't tell anybody.

Q        Would he threaten you with anything if you told somebody?

A        Uh-huh.

Q        You said - what exactly did he threaten you with?

A        A gun.

Q        Do you remember where that happened?

A        Where?

Q        Yes.

A        It was on Duchess Street.

Q        You said that you saw a gun?

A        Uh-huh.

D.C. testified that she was not whipped or beaten when the Defendant found out she told her mother and grandmother that something was happening to her.

D.C. further testified as follows:

I think after a time that it happened, I was crying and I think I said I was going to tell mom, and I guess he got mad and he came into the living room or the kitchen, get [sic] the gun, and he was like, if you tell her, I'm going to use the gun on you, or something like that.

D.C. then testified that she thought that was what had occurred. She then stated, "I'm not sure what actually happened." She indicated this occurred after she performed oral sex on the Defendant.

4

## ASSIGNMENT OF ERROR NUMBER ONE

The Defendant contends the evidence was insufficient to convict him of two counts of aggravated rape.

Aggravated rape is a rape committed upon a person sixty-five years of age or older or where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:

(1) When the victim resists the act to the utmost, but whose resistance is overcome by force.

(2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.

(3) When the victim is prevented from resisting the act because the offender is armed with a dangerous weapon.

(4) When the victim is under the age of thirteen years. Lack of knowledge of the victim's age shall not be a defense.

(5) When two or more offenders participated in the act.

(6) When the victim is prevented from resisting the act because the victim suffers from a physical or mental infirmity preventing such resistance.

La.R.S. 14:42(A).

The indictment set forth the charges of aggravated rape as follows:

AGGRAVATED RAPE (UNDER 13 YEARS OF AGE)-2 COUNTS

It further described the charges as follows:

COUNT 1: AGGRAVATED RAPE (UNDER 13 YEARS OF AGE) [V.L.G.] DID ENGAGE IN ORAL SEXUAL INTERCOURSE WITH TO WIT: D.C. DOB: 9-25-1994, A JUVENILE, WITHOUT THE VICTIM'S LAWFUL CONSENT UNDER CIRCUMSTANCES WHEREIN THE VICTIM WAS PREVENTED FROM RESISTING THE ACTS BY THREATS OF GREAT AND IMMEDIATE BODILY HARM, ACCOMPANIED APPARENT POWER OF EXECUTION OCCURRING IN CALCASIEU PARISH.

COUNT 2: AGRAVATED RAPE (UNDER 13 YEARS OF AGE) [V.L.G.] DID ENGAGE IN VAGINAL SEXUAL INTERCOURSE

5

WITH TO WIT: D.C. DOB: 9-25-1994, A JUVENILE, WITHOUT THE VICTIM'S LAWFUL CONSENT UNDER CIRCUMSTANCES WHEREIN THE VICTIM WAS PREVENTED FROM RESISTING THE ACTS BY THREATS OF GREAT AND IMMEDIATE BODILY HARM, ACCOMPANIED APPARENT POWER OF EXECUTION OCCURRING IN CALCASIEU PARISH.

The Defendant contends the indictment specifically stated that lack of consent was due to the Defendant having prevented D.C. from resisting through threats of great and immediate bodily harm accompanied by apparent power of execution. Further, the jury instructions included three recitations relating to force or threats of force. The Defendant contends the element of force as charged in the indictment was not proven beyond a reasonable doubt.

The Defendant cites La.Code Crim.P. art. 480, which states:

> If an offense may be committed by doing one or more of several acts, or by one or more of several means, or with one or more of several intents, or with one or more of several results, two or more of such acts, means, intents, or results may be charged conjunctively in a single count of an indictment, or set forth conjunctively in a bill of particulars, and proof of any one of the acts, means, intents, or results so charged or set forth will support a conviction.

He contends there was no conjunctive charging in the indictment. The Defendant also contends the language in the indictment clearly indicated the jury was to consider the use of force as an essential element of the offense. The Defendant further contends the jury instructions did not use conjunctive language in setting forth the elements of the crime, additionally indicating the intent of the State to charge him under La.R.S. 14:42(A)(2). The Defendant asserts the designation of D.C. as a juvenile did not place the lack of consent element under La.R.S. 14:42(A)(4) because a juvenile is a person under the age of seventeen. Likewise, neither the inclusion of the victim's date of birth nor the title "AGGRAVATED RAPE (UNDER 13 YEARS OF AGE)" indicated the consent issue charged by the

6

State was D.C.'s age, especially where the statute charged was simply listed as La.R.S. 14:42.

In support of his claims, the Defendant cites *State v. Dozier*, 258 La.Ann. 323, 246 So.2d 187 (1971). Therein, the bill of information attempted to charge the defendant with reckless operation of a vehicle using the following language: "'Robert C. Dozier did operate *the vehicle* in a criminally, negligent or reckless manner in violation of LSA RS 14:99.'" *Id*. at 189. The defendant argued the bill was defective because the statute could be violated in many ways, and the bill failed to state in what manner it was violated.

The supreme court stated:

> Reckless operation of a vehicle is not one of the offenses for which a short form indictment is provided. The bill of information therefore must, in accord with Code of Criminal Procedure Articles 463 and 464, set forth a plain, concise, and definite statement of the essential facts constituting the offense charged with the citation of the statute alleged to have been violated. R.S. 14:99 defines the crime as follows:

> 'Reckless operation of a *vehicle* is the operation of any *motor vehicle*, aircraft, vessel, *or* other means of conveyance in a criminally negligent or reckless manner.'

> Since there are several means by which this statute may be violated, an information charging its violation either must name conjunctively all the means used or must specify with particularity the one means used. La.C.Cr.P. Art. 480. It is obvious that the bill of information here is defective in that if [sic] fails to particularize the vehicle or to charge conjunctively in the language of the statute so as to include all vehicles. The bill fails to meet the standard for informing the accused of the offense charged set forth above in this opinion, and the motion to quash this bill of information should have been sustained.

*Id*. at 189-90 (footnote omitted) (emphasis added).

The Defendant discusses D.C.'s testimony and contends her vague, generalized statements that she may have viewed a gun failed to rise to the level of

7

immediate bodily harm. Moreover, there was no indication D.C. made any attempt to resist the sexual activity.

The Defendant cites *State v. Gray*, 556 So.2d 661 (La.App. 2 Cir. 1990), in support of his claims. In *Gray*, the second circuit vacated the jury's verdicts of aggravated rape and aggravated crime against nature, finding the State failed to prove beyond a reasonable doubt the aggravating factor of threat of immediate bodily harm accompanied by apparent power of execution. The second circuit stated:

> The victim stated that the defendant told her to be quiet or he would either hurt her or make her cry. However, the victim could not remember which statement was made. No specific threat of great bodily harm was ever made. The victim testified that when the defendant removed his trousers and placed them on the floor, she heard a metallic sound which she thought was a weapon. However, she stated that she never saw a weapon, the defendant never threatened her with a weapon, nor did he tell her that he had a weapon.
>
> The victim stated that she was very frightened and did what the defendant told her to do. Nevertheless, there was no evidence that the victim resisted the defendant. There was also insufficient evidence to show that the victim was prevented from resisting by threats of "great and immediate bodily harm" accompanied by the apparent power of execution. There was no proof that a weapon was used by the defendant.

*Id*. at 666-67.

The Defendant also cites *State v. Ruple*, 437 So.2d 873 (La.App. 2 Cir. 1983), stating it is distinguishable from *Gray*, 556 So.2d 661. In *Ruple*, 437 So.2d 873, the second circuit affirmed the defendant's conviction for attempted aggravated rape, stating the following:

> The victim (age 78) testified that Ruple (age 19) burst into her bedroom and attacked her. She testified that he beat her, choked her and threatened to kill her. The victim testified that she did her best to protect herself and prevent the rape but, as she observed, "There wasn't much I could do," and in the end her efforts were unsuccessful.

8

From this evidence a rational trier of fact could find that the victim resisted to the utmost and was overcome. The evidence supports the jury's verdict.

*Id.* at 878.

The Defendant argues that D.C.'s testimony more closely resembles that of the victim in *Gray*, 556 So.2d 661; therefore, this court should find the testimony in the case at bar is insufficient to support the convictions of aggravated rape as charged in the indictment.

The State asserts the Defendant was conjunctively charged. Furthermore, the evidence presented at trial was sufficient to support the verdicts based on D.C's age at the time of the offenses.

## Analysis

In *State v. Nicholas*, 10-866, (La.App. 5 Cir. 5/24/11), 67 So.3d 610, the defendant argued the evidence was insufficient to support the allegations set forth in the bill of information. The fifth circuit addressed the claim, stating the following:

> In his argument on the issue of sufficiency of evidence, Nicholas makes the point that the bill of information charged him with obstruction of justice "by tampering with evidence with the specific intent of distorting the results of any criminal investigation" in violation of La. R.S. 14:130.1. Nicholas asserts that there was no evidence that he tampered with evidence or that he was guilty under that statute as set forth in the bill of information.

> In the State's opening arguments, it was alleged that Nicholas was guilty of obstruction of justice because he retaliated against a witness who testified against him in a criminal proceeding. At the end of trial, the trial judge found Nicholas guilty of that crime in violation of La. R.S. 14:130.1(A)(3).

> While we agree that there is no evidence that Nicholas tampered with evidence in a criminal investigation as charged in the bill of information, that does not end our inquiry. The issue here is whether the bill of information adequately informed Nicholas of the charge against him, not whether the evidence presented was sufficient to prove the crime for which he was convicted.

Article 464 of the Code of Criminal Procedure provides that the indictment or the information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged. However, a defendant may not raise the sufficiency of an indictment for the first time after conviction, especially when the charging document fairly informed him of the charge against him and the alleged defect did not prejudice him. Further, a defendant must raise a claim that the indictment does not provide adequate notice of the charge prior to trial by filing a bill of particulars, and the failure to do so waives the claim. The time for testing the sufficiency of an indictment or bill of information is before trial by way of motion to quash or an application for a bill of particulars. A post-verdict attack on sufficiency of an indictment should be rejected unless the indictment failed to give fair notice of the offense charged or failed to set forth any identifiable offense.

We find no merit in Nicholas' argument on insufficiency of the evidence as it relates to the actual charge made in the bill of information. Nicholas was fully informed of the facts the State intended to show on the charge of obstruction of justice. Further, there was no objection to the sufficiency of the bill of information at trial.

*Id.* at 613-14 (footnotes omitted).

In *State v. Enterkin*, 45,655 (La.App. 2 Cir. 11/17/10), 56 So.3d 257, the defendant was charged with aggravated rape. In footnote one of its opinion, the second circuit stated:

The bill of information charged that the defendant violated "14:42 Aggravated Rape by committing rape upon K.M., on or about August 19, 2006 . . ." The bill did not set forth the age of K.M., or the fact that the defendant was being charged with aggravated rape of a child under the age of 13. After conducting a thorough review of the statutory and jurisprudential law, it does not appear that the state was required to set forth such facts. La. C. Cr. P. art. 465 lists specific indictment forms for the charging of certain offenses. The form for aggravated rape which may be utilized under the statute provides: 39. Aggravated Rape–A.B. committed aggravated rape upon C.D. In the instant case, the trial court explicitly stated in its charges to the jury that "[t]he defendant has been charged with committing the aggravated rape of [K.M.][ *sic* ] on or about August 19, 2006, when she was under the age of thirteen years old." The defendant has not alleged that he was unaware of the charges against him.

*Id*. at 259-60 (alterations in original).

10

The indictment in the case at bar charged that the Defendant committed aggravated rape in that he engaged in oral sex and vaginal sex with D.C. without her lawful consent under circumstances wherein she was prevented from resisting the acts by threats of great and immediate bodily harm accompanied by apparent power of execution. Additionally, in several places in the indictment the State indicated D.C. was under the age of thirteen. Furthermore, during voir dire, the prosecutor informed the prospective jurors that aggravated rape could be committed under four circumstances, which he then described. He then stated that two aggravating factors were at issue in the case at bar: 1) when the victim is prevented from resisting the act by threats of great and immediate bodily harm accompanied by apparent power of execution, and 2) when the victim is under the age of thirteen.

During his opening statement, the prosecutor asserted he went over the elements of the offenses during voir dire. During closing arguments, he said the following:

> In voir dire we went over the elements, but I want you to be reminded of them again. Remember what we defined aggravated rape as? Rape is a rape committed upon a person 65 years or older, that part would not apply, or aggravated rape is where the anal, oral, vaginal sexual intercourse is deemed to be without the lawful consent of the victim because it is committed under any one or more of these circumstances. We were talking about a victim that's under 13, a victim that's prevented from resisting the act by threats of great and immediate bodily harm accompanied by apparent power of execution.

He then asserted he had proven the Defendant raped D.C. when she was under thirteen years of age.

The trial court instructed the jury as follows:

> AGGRAVATED RAPE IS THE ACT OF ANAL, ORAL OR VAGINAL SEXUAL INTERCOURSE WHERE SUCH ACT IS DEEMED TO BE WITHOUT LAWFUL CONSENT OF THE

11

VICTIM BECAUSE IT IS COMMITTED UNDER ANY ONE OR MORE OF THE FOLLOWING CIRCUMSTANCES:

(1) THE PERSON RESISTED THE ACT TO THE UTMOST, BUT THE PERSON'S RESISTANCE WAS OVERCOME BY FORCE; OR

(2) THE PERSON WAS PREVENTED FROM RESISTING THE ACT BY THREATS OF GREAT AND IMMEDIATE BODILY HARM, ACCOMPANIED BY APPARENT POWER OF EXECUTION; OR

(3) THE PERSON WAS PREVENTED FROM RESISTING THE ACT BECAUSE THE DEFENDANT WAS ARMED WITH A DANGEROUS WEAPON, OR

(4) WHEN THE VICTIM IS UNDER THE AGE OF THIRTEEN YEARS. LACK OF KNOWLEDGE OF THE VICTIM'S AGE SHALL NOT BE A DEFENSE.

. . . .

THUS, IN ORDER TO CONVICT THE DEFENDANT OF AGGRAVATED RAPE, YOU MUST FIND:

(1) THAT THE DEFENDANT COMMITTED AN ACT OF ANAL, ORAL OR VAGINAL SEXUAL INTERCOURSE WITH VICTIM WITHOUT THE LAWFUL CONSENT OF VICTIM; AND

(2) THAT VICTIM RESISTED TO THE UTMOST BUT HER RESISTANCE WAS OVERCOME BY FORCE, OR VICTIM WAS PREVENTED FROM RESISTING BY THREATS OF GREAT AND IMMEDIATE BODILY HARM WITH APPARENT POWER OF EXECUTION, OR VICTIM WAS PREVENTED FROM RESISTING BECAUSE THE OFFENDER WAS ARMED WITH A DANGEROUS WEAPON, OR THAT THE VICTIM WAS UNDER THIRTEEN YEARS OF AGE.

We agree there was insufficient evidence to prove D.C. was prevented from resisting the Defendant's acts by threats of great and immediate bodily harm accompanied by apparent power of execution as alleged in the indictment. This court's inquiry should not end here. *See Gray*, 556 So.2d 661; *Nicholas*, 67 So.3d

610. The actual issue in the case at bar is whether the Defendant was adequately informed of the charges against him.

The Defendant did not file a motion for bill of particulars nor did he allege, pre-trial, that the indictment did not provide adequate notice of the charges. The indictment clearly indicated D.C. was under the age of thirteen at the time the offenses at issue were committed, and the Defendant was fully informed of the facts the State intended to show on the charges of aggravated rape. Further, there was no objection to the sufficiency of the indictment at trial.

For the reasons asserted herein, this assignment of error lacks merit.

## ASSIGNMENT OF ERROR NUMBER TWO

In his second assignment of error, the Defendant contends that the failure of the State to timely disclose critical impeachment evidence under *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763 (1972), that was material to guilt caused irreparable harm to him and did not constitute harmless error.

After the jury had been selected, but before the first witness was called to testify, the prosecutor informed the trial court that he had filed a supplemental discovery response that included D.C.'s counseling records. He asserted there was a reference to the counseling records in an interview that a detective conducted with the Defendant, and the records were not attached to the police report. The prosecutor contended that he "viewed the interview last week, that was the first time I saw mentioned [sic] of counseling records." When the detective was questioned, he indicated he did not have the records. The prosecutor further explained that when D.C. came in on the weekend, he asked the mother if D.C. had been in counseling. The mother indicated she had. When D.C. and her mother appeared in court, the mother gave the counseling records to the State's

13

investigator. That night, the prosecutor read the records. As soon as he realized "what they were," he called defense counsel. He then stated the following regarding his conversation with defense counsel:

> do you recall in Detective Irwin's interview the mention of counseling records. And she said yes. And I said, well, listen, I just got them, let me fax you a courtesy copy, there may be - there's some material in there that may be exculpatory, some very important material I need you to be aware of, and I gave her a courtesy copy and indicated to her – In good faith . . . .

The supplemental discovery was sealed by the trial court.

The counseling records at issue were obtained by the court. The report dated April 8, 2009, contains the following statement: "'I am truthful most of the time.'"

In brief to this court, the Defendant asserts the Children's Advocacy Center is an investigative arm of the State, D.C. was interviewed at the center in 2009, and, at that time, the State was put on notice of the existence of her counseling records.[1] The Defendant contends the State's late disclosure deprived him of a fair trial; therefore, he should be granted a new trial.

The State asserts the Defendant failed to sufficiently reveal or detail the precise evidence he refers to; thus, the assigned error should be deemed insufficient for review. The State further asserts that defense counsel failed to lodge a timely objection and she was not prejudiced by the timing of the disclosure.

> It is well settled that the State has an affirmative duty to disclose exculpatory evidence favorable to the defendant. *Brady v. Maryland*, 373 U.S. 83, 86-87, 83 S.Ct 1194, 1196-1197, 10 L.Ed.2d 215 (1963). But in order to prove a *Brady* violation, the defendant must establish, *inter alia*, that the evidence in question was, in fact, exculpatory or impeaching. *State v. Garrick*, 2003-0137, at p. 6 (La.4/14/04), 870 So.2d 990, 993. And, contrary to the statements of the prosecutor and defense counsel, the State can be held accountable

---

[1]The Court watched the DVD of the interview and counseling records were not mentioned. Further, the Defendant does not point to a page in the record on which this information can be found.

14

to disclose *Brady* information known to those acting on the government's behalf, even if the information is not known to the district attorney prosecuting the case and providing discovery. *Strickler v. Greene*, 527 U.S. 263, 281, 119 S.Ct. 1936, 1948, 144 L.Ed.2d 286 (1999).

Disclosure of exculpatory evidence should be made in time to allow a defendant to make effective use of such information in the presentation of his case. *State v. Prudholm*, 446 So.2d 729, 738 (La.1984). However, even where disclosure is made during trial, it will be considered timely if the defendant is not prejudiced. *State v. Huls*, 95-0541, pp. 12-13 (La.App. 1st Cir.5/29/96), 676 So.2d 160, 170, *writ denied*, 96-1734 (La.1/6/97), 685 So.2d 126. In order to be entitled to a reversal for failure to timely provide exculpatory information, the defendant must show that he was prejudiced. Discovery violations do not provide grounds for reversal unless they have actually prejudiced the defendant. *State v. Garrick*, 2003-0137 at p. 5, 870 So.2d at 993.

A discovery violation involving the State's failure to disclose exculpatory evidence does not require reversal as a matter of the Due Process Clause unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict. *State v. Garrick*, 2003-0137 at p. 5, 870 So.2d at 993. While late disclosure, as well as nondisclosure, of exculpatory evidence may deprive the defendant of a fair trial, in both instances the impact on the defense "must be evaluated in the context of the entire record." *State v. Kemp*, 2000-2228, p. 7 (La.10/15/02), 828 So.2d 540, 545.

*State v. Pitre*, 04-545, pp. 17-19 (La.App. 1 Cir. 12/17/04), 901 So.2d 428, 440-41, *writ denied*, 05-397 (La. 5/13/05), 902 So.2d 1018.

The information contained in the counseling records is considered exculpatory or impeaching. This information was turned over to defense counsel after voir dire but before the first witness was called to testify. This disclosure is timely if the Defendant was not prejudiced.

In his brief, the Defendant states: "Because the State's late disclosure deprived [V.L.G.] of a fair trial, this Honorable Court should grant him a new trial." The Defendant did not allege actual prejudice. Furthermore, he could not prove actual prejudice, as defense counsel asked D.C. on cross-examination if she

told a counselor in San Antonio that she was sometimes truthful. For the reasons asserted herein, we find that this assignment of error lacks merit.

## ASSIGNMENT OF ERROR NUMBER THREE

In his third assignment of error, the Defendant contends defense counsel was ineffective for failing to request a mistrial following the delayed presentation of significant *Brady* evidence to him by the State.

> A claim for ineffective assistance of counsel is properly raised in an application for post-conviction relief because this allows the trial court to order a full evidentiary hearing on the matter. *State v. Burkhalter*, 428 So.2d 449 (La.1983). However, where the record contains sufficient evidence to decide the issue, and the issue is raised by an assignment of error on appeal, it may be considered by the appellate court. *State v. Tapp*, 08-1262 (La.App. 3 Cir. 4/1/09), 8 So.3d 804; *See also State v. James*, 95-962 (La.App. 3 Cir. 2/14/96), 670 So.2d 461.

*State v. Christien*, 09-890, p. 7 (La.App. 3 Cir. 2/3/10), 29 So.3d 696, 701.

> This court has held that ineffective assistance of counsel claims must meet two separate criteria in order to have merit:

> > The right of a defendant in a criminal proceeding to the effective assistance of counsel is constitutionally mandated by the Sixth Amendment of the U.S. Constitution. In order to prove that counsel was ineffective, the defendant must meet the two-pronged test enunciated by the Supreme Court. First, the defendant must show that counsel's performance was deficient. Second, the defendant must show that this deficiency prejudiced the outcome of the trial. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish a claim of ineffective assistance of counsel, a defendant must demonstrate that his defense attorney failed to meet the level of competency normally demanded of attorneys in criminal cases.

> > In considering allegations of ineffectiveness, defense attorneys are entitled to a strong presumption that their conduct fell within the broad range of reasonable professional assistance. The United States Supreme Court has held that the benchmark for judging a charge of ineffectiveness is whether the attorney's conduct so undermined the proper functioning of the

16

> adversarial process that the trial cannot be considered to have produced a just result.
>
>> It is not enough for an accused to make allegations of ineffectiveness; the accused must couple these allegations with a specific showing of prejudice. A claim of ineffective assistance of counsel may be disposed of based upon a failure to satisfy either criteria of the established two-pronged test; if the accused's claim fails to satisfy one, the reviewing court need not address the other. A brief review of the defendant's complaints against his attorneys will demonstrate the deficiency of his arguments.

> *State v. James*, 95-962, pp. 4-5 (La.App. 3 Cir. 2/14/96), 670 So.2d 461, 465 (citations omitted). Moreover, "[i]t is not sufficient for the defendant to show the error had some conceivable effect on the outcome of the proceedings. Rather, he must show that but for counsel's unprofessional errors, there is a reasonable probability the outcome of the trial would have been different." *State v. Jones*, 33,657, p. 11 (La.App. 2 Cir. 8/23/00), 765 So.2d 1191, 1199, *writ denied*, 00-2779 (La.6/29/01), 794 So.2d 825.

In *State v. Beaudion*, 09-440, pp. 15-16 (La.App. 3 Cir. 12/23/09), 27 So.3d 342, 352-53 (alteration in original), we stated:

The Defendant asserts that one remedy for the State's failure to timely disclose discovery was for the trial court to order a mistrial pursuant to La.Code Crim.P. art. 729.5(A), which provides:

> If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this Chapter or with an order issued pursuant to this Chapter, the court may order such party to permit the discovery or inspection, grant a continuance, order a mistrial on motion of the defendant, prohibit the party from introducing into evidence the subject matter not disclosed, or enter such other order, other than dismissal, as may be appropriate.

The Defendant contends that had defense counsel requested a mistrial based on the State's failure to timely provide the information discussed in assignment of error number two, jeopardy would have attached, and the State would have been unable to retry him.

17

In support of his claims, the Defendant cites La.Code Crim.P. art. 592, which provides that jeopardy begins when the jury panel is sworn pursuant to La.Code Crim.P. art. 790. The Defendant also cites *State v. Brossette*, 93-1036 (La.App. 3 Cir. 3/2/94), 634 So.2d 1309, 1315, *writ denied*, 94-802 (La. 6/24/94), 640 So.2d 1344,[2] wherein this court stated:

> While the validity of the first trial judge's denial of Brossette's motion for mistrial is irrelevant on this appeal, we observe that double jeopardy would only have attached at that point if defendant's motion for mistrial was *successful* and if the prosecutorial conduct giving rise to the *successful* motion for mistrial was misconduct specifically *intended* to provoke the defendant into moving for a mistrial. Conduct that may be considered "bad faith harassment" or "overreaching", even if sufficient to justify a mistrial on defendant's motion, does not bar retrial absent prosecutorial *intent* to subvert the protections afforded by the Double Jeopardy Clause. *Oregon v. Kennedy*, supra [456 U.S. 667] at 674, 102 S.Ct. [2083] at 2089 [(1982)].
>
> Brossette's motion for mistrial was not successful. In his motion to quash filed prior to this second trial, defendant asserted that the prosecutor's questioning of Dr. Mayeux was improper and forced defense counsel to move for a mistrial. Brossette did not allege that the prosecutor's actions were intended to provoke defendant's motion for mistrial. While the prosecutor's actions may well have been "harassing" or "overreaching", the issue of his intent was foreclosed when the first trial judge, in his discretion, denied defendant's motion for mistrial. We will not consider the correctness of that decision rendered in the first trial on this appeal. Because a mistrial was ordered in the first trial for reasons other than intentional prosecutorial misconduct, defendant failed to set forth sufficient grounds to quash the indictment on the basis of double jeopardy. The second trial was a "manifest necessity". For these reasons, we find no merit in these assignments of error.

The Defendant asserts that counsel's failure to request a mistrial severely prejudiced him, and he is entitled to a new trial.

The State asserts the evidence at issue was of negligible importance and a request for a mistrial would have been frivolous. The State further contends the

---

[2]The Southern Reporter Second Series does not give public domain page numbers for this case.

18

Defendant cannot effectively demonstrate a *Brady* violation, so he certainly cannot prove defense counsel's ineffectiveness for failure to request a mistrial.

Even assuming that a *Brady* violation occurred, the Defendant cannot prove defense counsel was ineffective for failing to request a mistrial.

Louisiana Code of Criminal Procedure Article 591 provides:

> No person shall be twice put in jeopardy of life or liberty for the same offense, except, when on his own motion, a new trial has been granted or judgment has been arrested, or where there has been a mistrial legally ordered under the provisions of Article 775 or ordered with the express consent of the defendant.

Louisiana Code of Criminal Procedure Article 729.5(A) states that a mistrial may be granted on motion of a defendant for discovery violations.

Had defense counsel requested a mistrial, retrial of the Defendant would not have been barred pursuant to La.Code Crim.P. arts. 775 and 591 because the request for mistrial would have been granted with the Defendant's consent. Therefore, we find the Defendant cannot prove the prejudice he alleged. For this reason, this assignment of error lacks merit.

### ASSIGNMENT OF ERROR NUMBER FOUR

In his fourth assignment of error, the Defendant contends the testimony of Dr. Earl Soileau exceeded the permissible bounds of admissible Child Sexual Abuse Accommodation Syndrome testimony as set forth in *State v. Foret*, 628 So.2d 1116 (La.1993).

> Expert testimony can assist a jury in understanding the significance of a child-witness's demeanor, inconsistent reports, delayed disclosure, reluctance to testify, and recantation. *State v. Chauvin*, 02-1188 (La.5/20/03), 846 So.2d 697. *See also, State v. Foret*, 628 So.2d 1116 (La.1993). An expert witness can explain to the jury that a child-witness's seemingly abnormal behavior such as delayed reporting, inconsistent statements, and recantation is normal for children who have been sexually abused and can also dispel jurors inaccurate perceptions allowing them to better assess a child-witness's testimony. *State v. Chauvin*, 846 So.2d at 702-703.

The proper presentation of the expert testimony must focus on explaining to a jury why "superficially bizarre" reactions such as delayed reporting, and the like take place in such cases. *State v. Foret*, 628 So.2d at 1130. *See also*, *State v. Chauvin, supra*; *State v. Ste. Marie*, 97-0168 (La.App. 3 Cir. 4/18/01), 801 So.2d 424, 428, *appeal after remand on other grounds*, 01-1253 (La.App. 3 Cir. 4/10/02), 824 So.2d 358, *writ denied*, 02-1117 (La.12/19/02), 835 So.2d 1288. The expert's opinion testimony must explain in general the behavioral characteristics of child abuse victims in disclosing alleged incidents without giving an opinion directly concerning the particular victim's credibility. *State v. Foret*, 628 So.2d at 1130; *State v. Ste. Marie*, 801 So.2d at 429.

If the expert's testimony is properly limited in this fashion, then it is of assistance to the jury in evaluating the psychological dynamics and resulting behavior patterns of alleged victims of child sexual abuse. *State v. Foret*, 628 So.2d at 1130. The expert's testimony concerning why victims might recant or delay reporting offered to rebut attacks on the victim's credibility is proper, so long as the expert limits his testimony to the general characteristics that explain delays in reporting, recantations, and omission of details. *Id*. The expert cannot substitute his estimation of the child's credibility for that of the jury. The expert testimony can only provide a scientific perspective for the jury to evaluate the child's testimony for itself. *Id*.

Expert testimony becomes problematic when it is unduly prejudicial causing the jury to give too much weight to the expert's opinion stating medical conclusions drawn from diagnostic methods having limited merit as fact-finding devices, in order to determine the credibility of the victim and whether the sexual abuse has in fact occurred, since it bolsters a child-witness's testimony because of the reliability and trustworthiness associated with scientific or medical evidence. *State v. Chauvin*, 846 So.2d at 707. In short, the expert testimony on the victim's credibility is prejudicial when it puts an expert's stamp of truthfulness on the witness's testimony bolstering it artificially to increase its probative strength with the jury. *State v. Foret*, 628 So.2d at 1129.

*State v. Myles*, 04-434, pp. 10-12 (La.App. 5 Cir. 10/12/04), 887 So.2d 118, 125-26.

Dr. Soileau was qualified as an expert in adolescent medicine. The Defendant complains about the following portions of Dr. Soileau's testimony (emphasis added):

20

Q    In dealing with sexual assault victims, do you come across a lot of characteristics that they have?

A    Yes. You know, there are ways in which children will respond, children and adolescents will respond to sexual assault, and those ways have been characterized, **the majority of patients will respond in one of a few different ways. And if you have specifics, I'll be glad to say that**, or I can go into some of the ways that they would respond.

          . . . .

Q    So there's a lot of factors that we find in children that have suffered sexual abuse that perhaps the average person, the average adult, might have preconceived ideas about?

A    Right. **Usually adults feel like – in general, adults have been shown to feel like the children should tell the truth, the whole truth, all at one time and in an organized way and should not want to go back to the home and should have told the truth immediately, when it first happened.** And so a lot of times adults who have a different frame of reference, adults have been through a lot of different situations, so they have experience with dealing with all kinds of situations, they're more likely to be able to get themselves - to see a course of action that is - seems most appropriate to them and would probably - most people would see was most appropriate. Whereas children have no frame of reference, they don't know what to do when something like this happens, and they're - they don't see any guarantee that if they do tell someone, like if it's a father, they tell the mother; if it's mother, they tell the father, that anything will change. And what will happen is, the person who is the perpetrator finds out that they've told and gets mad, and if they stay in the home situation then they could - you know, it's a very tough living situation. On the other hand, you know, the accommodation to the abuse, they may just decide they want to live with it instead of trying to bring the whole world - their whole world to a crashing halt.

The State contends Dr. Soileau's testimony was admissible under *Foret*, 628 So.2d 1116, and *State v. Vidrine*, 08-1059 (La.App. 3 Cir. 4/29/09), 9 So.3d 1095, *writ denied*, 09-1179 (La. 2/26/10), 28 So.3d 268. In *Vidrine*, this court found testimony regarding the general characteristics of delayed reporting and inconsistencies in the testimony of child sexual abuse victims was admissible under *Foret*, 628 So.2d 116.

In *Myles*, 887 So.2d at 126, the fifth circuit discussed permissible expert testimony as follows:

> In the present case, the defense objected to Dr. Benton giving an expert opinion about a victim that he had not examined and about "how a child who has been sexually assaulted should react either at the hospital upon exam" or when they testify in court. Defense counsel claimed that the State was trying to qualify Dr. Benton "as an expert to tell the jury that they're suppose to believe what this young lady testified to, and the manner she testified to," instead of leaving the credibility determination to the jury. The trial court found that the question was appropriate for an expert witness to allow an expert opinion that might assist the trier of fact.

> At trial, Dr. Benton testified that a child's behavior is not predictable and that it would be unwise to draw conclusions about the veracity of B.W.'s statements based solely on her demeanor. When asked if he could draw any conclusions based on B.W.'s behavior the day after the assault, Dr. Benton responded that the victim's aunt seemed to have been an accurate describer of some behaviors that were abnormal for an eleven-year-old child. He declined to comment on whether B.W.'s behavior was abnormal or, if so, what caused it since he had not witnessed her behavior. He opined that, based upon B.W.'s history and testimony, B.W. had a multitude of potential reasons for exhibiting these behaviors, including her mother's arrest, witnessing domestic violence, and her allegations of sexual assault. Dr. Benton was unwilling to draw any conclusions as to her behavior but felt it warranted further exploration. Dr. Benton agreed that the ultimate question of whether B.W. was molested was for the jury.

> In this case, Dr. Benton's testimony included a general opinion on the physical signs one might see in a sexual abuse examination of a victim in B.W.'s age range. Dr. Benton testified that there was no way to tell purely based on physical science whether B.W. was molested. Dr. Benton refused to give an opinion on the credibility of B.W.'s allegations and testimony.

> Dr. Benton gave a description of general behavioral traits in sexually abused children, and testified that delayed reporting of certain events was not atypical for any child of the defendant's age, who had been sexually abused. Under *State v. Chauvin*, *supra* and *State v. Foret*, supra, this testimony is admissible. Further, his testimony was properly limited to general behavioral characteristics of child abuse victims in disclosing alleged incidents, specifically why victims might recant or delay reporting, which is proper to rebut attacks on the victim's credibility. *State v. Ste. Marie*, *supra*. His testimony only gave assistance to the jury in evaluating the psychological dynamics and resulting behavior patterns of alleged

22

victims of child sexual abuse. *Id*. This assignment of error lacks merit.

Based on the ruling in *Myles*, Dr. Soileau's testimony was proper. Accordingly, this assignment of error lacks merit.

## ASSIGNMENT OF ERROR NUMBER FIVE

In his fifth assignment of error, the Defendant contends the redacted jail phone call recordings served no other purpose than to declare him a man of generally immoral character and were, therefore, not admissible.

The Defendant states the tapes contained angry statements and curse words by him. Because the impermissible character evidence injected undue prejudice into the trial, this court should grant him a new trial.

The State contends the Defendant fails to discuss in detail the objectionable content of the phone calls at issue. Further, he failed to properly argue the assigned error via record citations and jurisprudential references; therefore, this court should disregard or deem the assignment of error abandoned.

In brief to this court, the Defendant does not indicate the tape recordings at issue were admitted into evidence at his trial he argues. If they were admitted, he fails to identify the exhibit numbers affixed to the tape recordings and point to a page number in the record where those recordings were played for the jury. Further, he does not discuss the content of those recordings. For these reasons, this assignment of error should be considered abandoned pursuant to Uniform Rules— Courts of Appeal, Rule 2-12.4.

In his sixth assignment of error, the Defendant argues that this court erred when it reversed the lower court's ruling to grant a hearing on the Defendant's second motion for a new trial in *State v. [V.L.G.]*, an unpublished writ ruling bearing docket number 10-1425 (La.App. 3 Cir. 12/17/10). The Defendant maintains that pursuant to La.Code Crim.P. art. 853, a motion for new trial based on newly discovered evidence may be filed within one year after verdict or judgment of the trial court although a sentence has been imposed or a motion for a new trial has been previously filed. Because his second motion for new trial based on newly discovered evidence was filed after the ruling on the first motion but before sentencing, the Defendant contends his motion was timely. Additionally, the Defendant asserts that the requirements of La.Code Crim.P. art. 854 were satisfied considering the motion itself and the sworn affidavit of counsel.

Prior to sentencing, originally scheduled for October 29, 2010, the Defendant filed a motion to reconsider the denial of his motion for a new trial. Following a hearing, the trial court rescheduled the Defendant's sentencing and scheduled a hearing on the motion, both to be heard on January 5, 2011.

The State sought review of the trial court's ruling in *State v. [V.L.G.]*, an unpublished writ ruling bearing docket number 10-1425 (La.App. 3 Cir. 12/17/10). This court ruled as follows:

> **WRIT GRANTED AND MADE PEREMPTORY:** The trial court erred in considering the Defendant's "Motion to Reconsider the Denial of New Trial." The trial court granted the Defendant's original motion for new trial, but the supreme court overruled the trial court, reinstated the convictions, and remanded for sentencing. As such, the Defendants second motion constituted an "additional motion for new trial," as provided in La.Code Crim.P. art. 856, which must have been filed before the trial court's ruling on the original motion and was, therefore, clearly untimely.

Further, the Defendant did not prove when the information alleging juror misconduct, which formed the basis for his new claims, was discovered, thereby failing to prove that it constituted newly-discovered evidence. Indeed, the Defendant avers that the information was known to him "shortly after the verdict" and that it was in the public domain by at least January 17, 2010, well before the trial court's ruling on his original motion for new trial.

Accordingly, the trial court's ruling granting a hearing on the Defendant's untimely motion for new trial is hereby reversed, vacated, and set aside, and the case is remanded for sentencing, in accordance with the order of the Louisiana Supreme Court, to be undertaken at the earliest available date.

The Defendant sought a stay of the proceedings and writs in the supreme court which were both denied. *State v. [V.L.G.]*, 11-34 (La. 1/6/11), 53 So.3d 465.

Although the Defendant's second motion for new trial was based on a claim of newly discovered evidence as provided in La.Code Crim.P. art. 851(3), this court found the motion untimely pursuant to LaCode CrimP. art. 856, because the motion and affidavit introduced in support of the motion did not show that the Defendant learned of the newly discovered evidence prior to the trial court's ruling on the first motion for new trial. Article 856 states that the trial court "may permit the defendant to supplement his original motion by urging an additional ground, or may permit the defendant to file an additional motion for a new trial, ***prior to the court's ruling on the motion***." (Emphasis added).

The Defendant's second motion for new trial avers in paragraph seven that the Defendant learned of the alleged juror misconduct ***after*** the hearing on the first motion for new trial. The affidavit in support of the motion indicates that the information was discovered shortly after the verdict and that concerns about a "hold out" juror's verdict were in the public domain on January 17, 2010, in a post on the juror's Facebook page. As such, this court concluded that Article 856 applied to the Defendant's second motion for new trial because it was an additional

motion that should have been filed prior to the ruling on the original motion for new trial on February 5, 2010.

The Defendant does not raise any new issue on appeal regarding this ruling. Accordingly, the assignment of error lacks merit.

## ASSIGNMENT OF ERROR NUMBER SEVEN

In his seventh assignment of error, the Defendant argues that the trial court erred when it denied his motion for arrest of judgment based on grounds that the non-unanimous verdict as provided in La.Code Crim.P. art. 782 is unconstitutional. Prior to addressing the merits of Defendant's assignment of error, the court feels compelled to discuss the issue of notice to the attorney general's office regarding the attack on the constitutionality of La.Code Crim.P. art. 782. The certificate of service on the motion in arrest of judgment indicates that only the district attorney's office was served with a copy. The record before this court does not indicate the attorney general's office was sent notice of the constitutional attack on La.Code Crim.P. art. 782. Louisiana Code of Civil Procedure Article 1800, which deals with declaratory judgment actions, requires the attorney general be served with a copy of the proceeding if a statute is alleged to be unconstitutional. Louisiana Revised Statutes 13:4448 requires the courts of appeal and the supreme court to notify the attorney general and afford him an opportunity to be heard prior to adjudicating the constitutionality of a state statute. Additionally, La.R.S. 49:257(C) provides, in pertinent part, "the attorney general, at his discretion, shall represent or supervise the presentation of the interests of the state in any action or proceeding in which the constitutionality of a state statute . . . is challenged or assailed."

In *Vallo v. Gayle Oil Co., Inc.*, 94-1238, p.7 (La. 11/30/94), 646 So.2d 859, 864, the supreme court stated:

> When the constitutionality of a statute, ordinance or franchise is assailed in a declaratory judgment action the attorney general must be served with a copy of the proceeding and he is entitled to be heard and/or, at his discretion, to represent or supervise the representation of the interests of the state in the proceeding. LSA-R.S. 49:257(B); LSA-C.C.P. art. 1880. In all other proceedings in which the constitutionality of a statute, ordinance or franchise is assailed, the attorney general *should* be served notice and/or a copy of the pleading and, at his discretion, be allowed to be heard and to represent or supervise the representation of the interests of the state in the proceeding. LSA-R.S. 49:257(B); see also LSA-R.S. 13:4448.

In light of the above-referenced statutes and jurisprudence and the fact that the trial court denied Defendant's motion in arrest of judgment, this court may address the issue of the constitutionality of La.Code Crim.P. art. 782.[3]

The Defendant asserts that the United States Supreme Court decision in *McDonald v. City of Chicago*, ___ U.S. ___, ___, 130 S.Ct. 3020, 3035 (2010), "reaffirmed that '[I]ncorporated Bill of Rights protections are **all** to be enforced against the State under the Fourteenth Amendment according to the same standards that protect those personal rights against federal encroachment.' (emphasis added)." As such, the Defendant maintains that the stance in *McDonald* effectively reversed the selective application of the Bill of Rights applied in *Apodaca v. Oregon*, 406 U.S. 404, 92 S.Ct. 1628 (1972), and by reference, rendered the non-unanimous verdict unconstitutional.

The State maintains that the Defendant's motion entitled "Motion for Arrest of Judgment Under La.C.Cr.P. Art. 859(4)" was flawed in form because pursuant

---

[3]In *State v. Expunged Record Number 249,044*, 02-589 (La.App. 3 Cir. 12/11/02), 833 So.2d 553, this court found the issue of constitutionality of a statute was not properly before this court because there was no evidence in the record that service was made on the attorney general. However, that case involved a petition for declaratory judgment. Additionally, in *Huber v. Midkiff*, 02-664 (La. 2/7/03), 838 So.2d 771, the supreme court found the constitutional challenge was not properly before the court because the attorney general's office had not been notified; it is noteworthy that the trial court declared the statute to be unconstitutional.

to La.Code Crim.P. art. 859(4), such a motion does not serve to challenge the constitutionality of a state statute. Louisiana Code of Criminal Procedure Article 859 reads:

> The court shall arrest the judgment only on one or more of the following grounds:
>
> (1) The indictment is substantially defective, in that an essential averment is omitted;
>
> (2) The offense charged is not punishable under a valid statute;
>
> (3) The court is without jurisdiction of the case;
>
> (4) The tribunal that tried the case did not conform with the requirements of Articles 779, 780 and 782 of this code;
>
> (5) The verdict is not responsive to the indictment, or is otherwise so defective that it will not form the basis of a valid judgment;
>
> (6) Double jeopardy, if not previously urged; or
>
> (7) The prosecution was not timely instituted, if not previously urged.
>
> (8) The prosecution was for a capital offense or for an offense punishable by life imprisonment, but was not instituted by a grand jury indictment.
>
> Improper venue may not be urged by a motion in arrest of judgment.

The State contends that the proper way to challenge the constitutionality of a statute is via a motion to quash and that any document attacking constitutionality must be particular with regard to the offending nature of the provision.

In *State v. Hatton*, 07-2377, pp. 14-15 (La. 7/1/08), 985 So.2d 709, 719-20 (alteration in original), the supreme court stated:

> While there is no single procedure for attacking the constitutionality of a statute, it has long been held that the unconstitutionality of a statute must be specially pleaded and the grounds for the claim particularized. *State v. Schoening*, 00-0903, p. 3 (La.10/17/00), 770 So.2d 762, 764 (citing *Vallo v. Gayle Oil Co.*, 94-1238, p. 8 (La.11/30/94), 646 So.2d 859, 864-65). This Court has expressed the challenger's burden as a three step analysis. First, a

28

party must raise the unconstitutionality in the trial court; second, the unconstitutionality of a statute must be specially pleaded; and third, the grounds outlining the basis of unconstitutionality must be particularized. *Vallo v. Gayle Oil Co., Inc.*, 94-1238, p. 8 (La.11/30/94), 646 So.2d 859, 864-865. The purpose of these procedural rules is to afford interested parties sufficient time to brief and prepare arguments defending the constitutionality of the challenged statute. *State v. Schoening*, 00-0903, p. 3 (La.10/17/00), 770 So.2d 762, 764 (citing *Vallo v. Gayle Oil Co., Inc.*, 94-1238, p. 8 (La.11/30/94), 646 So.2d 859, 865). The opportunity to fully brief and argue the constitutional issues provides the trial court with thoughtful and complete arguments relating to the issue of constitutionality and furnishes reviewing courts with an adequate record upon which to consider the constitutionality of the statute. *Id.*

The final step of the analysis articulated above requires that the grounds outlining the basis of the unconstitutionality be particularized. This Court has thoroughly considered the standard for particularizing the constitutional grounds. The purpose of particularizing the constitutional grounds is so that the adjudicating court can analyze and interpret the language of the constitutional provision specified by the challenger. *State v. Expunged Record (No.) 249, 044*, 03-1940, p. 4 (La.7/2/04), 881 So.2d 104, 107 (citing *Louisiana Mun. Ass'n v. State*, 00-0374, p. 5 (La.10/6/00), 773 So.2d 663, 667 ("In adjudicating [a] constitutional challenge, the court must analyze and interpret the language of the constitutional provision specified by the challenger.")). This basic principle dictates that the party challenging the constitutionality of a statute must cite to the specific provisions of the constitution which prohibits the action. *State v. Fleury*, 01-0871, p. 5 (La.10/16/01), 799 So.2d 468, 472 (citing *Moore v. Roemer*, 567 So.2d 75, 78 (La.1990)); *see also State v. Granger*, 07-2285, p. 3 (La.5/21/08), 982 So.2d 779; *State v. Herring*, 211 La. 1083, 31 So.2d 218, 219-220 (1947) (citing *City of Shreveport v. Pedro*, 170 La. 351, 127 So. 865 (La.1930)); *A. Sulka & Co. v. City of New Orleans*, 208 La. 585, 23 So.2d 224, 229 (1945) ("It is elementary that he who urges the unconstitutionality of a law must especially plead its unconstitutionality and show specifically wherein it is unconstitutional. . . .").

The court notes, first, that the title of the Defendant's motion indicates it was filed pursuant to Article 859(4), whereas the Defendant states in the second paragraph of the motion, "La.C.Cr.P. 859(A) provides that the court shall arrest the judgment when the tribunal does not conform with the requirements of Article 782." Article 859 does not have a section "A" and section 4 does not read as claimed by the Defendant. Considering there is no single procedure for attacking

29

the constitutionality of a statute as stated in *Hatton*, the court finds that the Defendant's motion, regardless of its title or error in citation, should be analyzed to determine, first, if the pleading complies with the requirements set forth in *Hatton*.

With regard to first and second steps of the analysis, the Defendant's pleading clearly raises the unconstitutionality of Article 782 which provides for a non-unanimous verdict in a felony criminal jury trial. He asserted that such verdicts violate the Sixth and Fourteenth Amendments to the United States Constitution. In the subsequent paragraph of the pleading, the Defendant maintains that provisions in the Louisiana Constitution and Criminal Code of Procedure allowing for non-unanimous verdicts violate both the Sixth and Fourteenth Amendments.

With regard to the third step in the analysis, Defendant sets forth grounds for the alleged unconstitutionality by addressing two issues: "(1) whether the Sixth Amendment's jury trial clause requires unanimity for criminal convictions; and (2) if so, whether that constitutional rule applies to the states by means of the Fourteenth Amendment." Accordingly, the court finds that the Defendant's motion satisfied the three-step analysis as set forth in *Hatton*; and thus, the merits of his argument are considered herein.

Louisiana Constitution Article I, § 17, provides that a case in which the punishment is necessarily confinement at hard labor shall be tried before a jury of twelve persons, ten of whom must concur to render a verdict. Almost identically, La.Code Crim.P. art. 782 provides that cases in which punishment is necessarily confinement at hard labor shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict.

With regard the Defendant's two convictions for aggravated rape of a child under thirteen years of age, he faced life imprisonment at hard labor, which requires the concurrence of ten jurors to render a verdict.[4] La.R.S. 14:42 and La.Code Crim.P. art. 782. In *State v. Bertrand*, 08-2215, 08-2311, pp. 5-8 (La. 3/17/09), 6 So.3d 738, 741-43, the supreme court discussed non-unanimous jury verdicts as follows:

> In *Apodaca*, the United States Supreme Court examined an Oregon statute similar to Article 782, in that the Oregon statute did not require unanimous jury verdicts in noncapital cases. In a plurality decision, the Court determined that the United States Constitution did not mandate unanimous jury verdicts in state court felony criminal trials, with four Justices holding that the Sixth Amendment guarantee of a jury trial, made applicable to the States by the Fourteenth Amendment, does not require that a jury's vote be unanimous. Justice Powell concurred in the judgment of the Court for reasons different than those expressed by the author of the opinion. Four Justices, disagreed, finding that the Sixth Amendment guarantee of a jury trial was made applicable to the States by the Fourteenth Amendment, and does require a unanimous jury.

> The defendants argue here that, because no single rationale for the non-unanimity position prevailed in *Apodaca* and in light of more recent Supreme Court Sixth Amendment jurisprudence, the validity of the *Apodaca* decision is questionable. Defendants further argue that the *Apodaca* decision is diametrically opposed to the approach taken by the U.S. Supreme Court in recent Sixth Amendment cases involving Federal criminal jury trials, in that, rather than looking at the text of the Amendment and the Framers' understanding of the right at the time of adoption, the decision relied on the function served by the jury in contemporary society. Finally, defendants argue that the use of non-unanimous verdicts have an insidious racial component, allow minority viewpoints to be ignored, and is likely to chill participation by the precise groups whose exclusion the Constitution has proscribed.

> This Court has previously discussed and affirmed the constitutionality of Article 782 on at least three occasions. In *State v.*

---

[4]The Defendant does not contest his conviction for aggravated incest. Also, La.R.S. 14:42 provides for the death penalty for aggravated rape of a child under thirteen. However, the Supreme Court's ruling in *Kennedy v. Louisiana*, 554 U.S. 407, 128 S.Ct. 2641 (2008) found that the death penalty in La.R.S. 14:42 violates the Eighth Amendment of the United States Constitution which prohibits the death penalty for the rape of a child where the crime did not result, and was not intended to result, in the death of the victim. As such, the death penalty was not an option in the instant case.

*Jones*, 381 So.2d 416 (La.1980), we ruled that Article 782 did not violate the Sixth and Fourteenth Amendments. Later, in *State v. Simmons*, 414 So.2d 705 (La.1982), we found that Article 782 did not violate either the Fifth or Fourteenth Amendments. Finally, in *State v. Edwards*, 420 So.2d 663 (La.1982), we again affirmed the statute's constitutionality.

Despite defendants' arguments to the contrary, the case law of the United States Supreme Court also supports the validity of these decisions. Although the *Apodaca* decision was, indeed, a plurality decision rather than a majority one, the Court has cited or discussed the opinion not less than sixteen times since its issuance. On each of these occasions, it is apparent that the Court considered that *Apodaca's* holding as to non-unanimous jury verdicts represents well-settled law. For instance, in *Burch v. Louisiana*, 441 U.S. 130, 99 S.Ct. 1623, 1626-27, 60 L.Ed.2d 96 (1979), the Court matter-of-factly recognized the reasoning behind the *Apodaca* holding as support for its overturning of a jury conviction by a 5-1 margin. Further, in *Holland v. Illinois*, 493 U.S. 474, 110 S.Ct. 803, 823, 107 L.Ed.2d 905 (1990) (Stevens, J., dissenting), Justice Stevens stated that it was the fair cross section principle underlying the Sixth Amendment's right to a jury trial that permitted non-unanimous juries. Justice Scalia, a noted originalist on the Court, explicitly rejected a unanimity requirement in his dissent *McKoy v. North Carolina*, 494 U.S. 433, 110 S.Ct. 1227, 108 L.Ed.2d 369(1990), saying:

> Of course the Court's holding today—and its underlying thesis that each individual juror must be empowered to "give effect" to his own view—invalidates not just a requirement of *unanimity* for the defendant to benefit from a mitigating factor, but a requirement for any number of jurors more than one. This it is also in tension with *Leland v. Oregon* (citation omitted), which upheld, in a capital case, a requirement that the defense of insanity be proved (beyond a reasonable doubt) to the satisfaction of at least 10 of the 12-member jury. Even with respect to proof of the substantive offense, as opposed to an affirmative defense, we have approved verdicts by less than a unanimous jury. *See Apodaca v. Oregon* (citation omitted) (upholding state statute providing for conviction by a 10-to-2 vote).

*McKoy*, 110 S.Ct. at 1246-47 (Scalia, J., dissenting) (emphasis in original). Likewise, in *United States v. Gaudin*, 515 U.S. 506, 115 S.Ct. 2310, 2314, 132 L.Ed.2d 444 (1995), the Court, in a unanimous opinion, recognized the reasoning behind the *Apodaca* decision. Finally, Justice Souter, dissenting in *Rita v. United States*, 551 U.S. 338, 127 S.Ct. 2456, 2484, 168 L.Ed.2d 203, (2007) (Souter, J., dissenting), again recognized the *Apodaca* holding as well-settled law.

. . . .

Due to this Court's prior determinations that Article 782 withstands constitutional scrutiny, and because we are not presumptuous enough to suppose, upon mere speculation, that the United States Supreme Court's still valid determination that non-unanimous 12 person jury verdicts are constitutional may someday be overturned, we find that the trial court erred in ruling that Article 782 violated the Fifth, Sixth, and Fourteenth Amendments. With respect to that ruling, it should go without saying that a trial judge is not at liberty to ignore the controlling jurisprudence of superior courts.

*See also State v. McElveen*, 10-172 (La.App. 4 Cir. 9/28/11), __ So.3d ___; *State v. Wade*, 10-997 (La.App. 5 Cir. 8/30/11), ___ So.3d ___; *State v. Adams*, 10-1140 (La.App. 4 Cir. 6/1/11), 68 So.3d 1165; *State v. Jacobs*, 07-887 (La.App. 5 Cir. 5/24/11), 67 So.3d 535; *State v. Barnett*, 46,303 (La.App. 2 Cir. 5/18/11), 70 So.3d 1; *State v. Payton*, 10-1166 (La.App. 4 Cir. 5/18/11), 68 So.3d 594; *State v. Collins*, 10-757 (La.App. 4 Cir. 5/11/11), 65 So.3d 271; *State v. Grace*, 10-1222 (La.App. 3 Cir. 4/6/11), 61 So.3d 812; *State v. Johnson*, 45,828 (La.App. 2 Cir. 1/26/11), 57 So.3d 1087; *State v. Boudreaux*, 08-1504 (La.App. 4 Cir. 9/29/10), 48 So.3d 1144, *writ denied*, 10-2434 (La. 4/8/11), 61 So.3d 682, *writ denied,* 11-961 (La. 10/21/11), __ So.3d __; *State v. Lawrence*, 09-1637 (La.App. 4 Cir. 8/25/10), 47 So.3d 1003; *State v. Sumrall*, 09-1216 (La.App. 3 Cir. 4/7/10), 34 So.3d 977, *writ denied*, 10-1020 (La. 12/10/10), 51 So.3d 722; *State v. Every*, 09-721 (La.App. 4 Cir. 3/24/10), 35 So.3d 410, *writ denied*, 10-929 (La. 11/19/10), 49 So.3d 397.

The Defendant's assertion that the *McDonald* decision rendered the non-unanimous verdict unconstitutional is misguided. The Defendant focuses on the following language:

Finally, the Court abandoned "the notion that the Fourteenth Amendment applies to the States only a watered-down, subjective version of the individual guarantees of the Bill of Rights," stating that it would be "incongruous" to apply different standards "depending on

33

whether the claim was asserted in a state or federal court." Instead, the Court decisively held that incorporated Bill of Rights protections "are all to be enforced against the States under the Fourteenth Amendment according to the same standards that protect those personal rights against federal encroachment."

*McDonald,* __U.S.__, __, 130 S.Ct. at 3035 (citations omitted). The issue identified by the Defendant in this passage, however, has no relation to the issue in the instant case.

This court may not ignore controlling jurisprudence regarding the constitutionality of non-unanimous jury verdicts. Accordingly, this assignment of error lacks merit.

## ASSIGNMENT OF ERROR NUMBER EIGHT

In his eighth assignment of error, the Defendant contends the sentence of life without parole imposed by statute on two counts of aggravated rape is unconstitutionally excessive as applied to him.

The Defendant was convicted of two counts of aggravated rape and sentenced to the mandatory term of life imprisonment on each count. La.R.S. 14:42.

The Defendant contends the mandatory sentence of life without parole was unconstitutionally excessive as applied considering this was a non-homicide case and he is a first-offender. In support of his contention, the Defendant cites *Graham v. Florida*, __ U.S. __, 130 S.Ct. 2011 (2010), in which the Supreme Court held the Eight Amendment prohibits imposition of life without parole for a juvenile offender who did not commit a homicide. The Defendant also cites *Kennedy v. Louisiana*, 554 U.S. 407, 128 S.Ct. 2641 (2008), *opinion modified on denial of rehearing*, __ U.S. __, 129 S.Ct. 1 (2008), in which the Supreme Court held the Eighth Amendment prohibits the death penalty for rape of a child where

34

the crime did not result, and was not intended to result, in the death of the victim. The Defendant argues that, given the decisions in *Graham*, 130 S.Ct. 2011, and *Kennedy*, 129 S.Ct. 1, it is apparent that the sentencing goal of rehabilitation is an important criteria in determining the constitutionality of a sentence. Because the sentences imposed in the case at bar eliminated the possibility of rehabilitation, they should be declared unconstitutionally excessive.

The State contends the sentences are not excessive. In support of that argument, the State cites *State v. Ross*, 03-564 (La.App. 3 Cir. 12/17/03), 861 So.2d 888, *writ denied*, 04-376 (La. 6/22/04), 876 So.2d 829. In *Ross*, the sixteen-year-old defendant was convicted of aggravated rape and sentenced to life imprisonment. On appeal he argued his sentence was excessive and should have been set aside and the matter remanded for imposition of a sentence "'more fairly reflective of the offense and the offender.'" *Id.* at 896. This court stated the following:

> In *State v. Johnson*, 97-1906, p. 9 (La.3/4/98), 709 So.2d 672, 677, the supreme court explained:
>
> > We emphasize to sentencing judges that departures downward from the minimum sentence . . . should occur only in rare situations. As Chief Justice Calogero noted in a prior case:
> >
> > The substantive power to define crimes and prescribe [sic] punishments lies in the legislative branch of government. [citation omitted]. Our decision in *State v. Dorthey*, 623 So.2d 1276 (La.1993), did not purport to grant a district court the power to usurp that legislative prerogative or to impose what the court believes is the most appropriate sentence for a particular offender in a particular case. *Dorthey* gives the district court the authority to depart from the mandatory minimum sentences provided by the legislature only in those relatively rare cases in which the punishment provided violates the prohibition of La. Const. art. I, § 20 against excessive sentences. (citations omitted).

35

In this case, the Defendant has failed to prove by clear and convincing evidence unusual circumstances that demonstrate that this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. Furthermore, the Defendant failed to prove any unusual circumstances warranting a departure from the mandatory minimum sentence provided by the legislature. Consequently, this court finds that the sentence imposed upon the Defendant is not constitutionally excessive.

*Id*. 897-98 (alterations in orginial).

In *State v. H.J.L.*, 08-823, pp. 7-8 (La.App. 3 Cir. 12/10/08), 999 So.2d 338, 343, *writ denied*, 09-606 (La. 12/18/09), 23 So.3d 936, a case involving the aggravated rape of a child victim, this court stated:

The defendant was sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. This is the mandatory sentence for aggravated rape if the victim is under thirteen years of age. La.R.S. 14:42(D)(2)(b).

In *State v. Foley*, 456 So.2d 979, 981 (La.1984), the supreme court discussed the penalty for aggravated rape as follows:

The mandatory life sentence for aggravated rape is a valid exercise of the state legislature's prerogative to determine the length of sentence for crimes classified as felonies. *State v. Prestridge*, 399 So.2d 564 (La.1981); *State v. Farria*, 412 So.2d 577 (La.1982); and *State v. Talbert*, 416 So.2d 97 (La.1982).

In light of the court's reasoning in *Foley*, we find the defendant's sentence is not excessive and that this assignment of error lacks merit.

*See also State v. J.D.*, 09-995 (La.App. 3 Cir. 3/10/10), 32 So.3d 1072; *State v. J.V.F.*, 10-151, 10-152 (La.App. 3 Cir. 10/6/10), 47 So.3d 1.

Based on the cases cited herein, the court finds the Defendant's mandatory life sentences are not excessive. Accordingly, this assignment of error lacks merit.

**DECREE**

The Defendant's convictions for aggravated rape are affirmed. However, the trial court failed to impose the Defendant's aggravated rape sentences at hard

labor, rendering the sentences illegally lenient.  La.R.S. 14:42(D). We vacate the sentences and remand the matter back to the trial court to address the failure to sentence the Defendant at hard labor.  *State v. Guidry*, 08-1574 (La.App. 3 Cir. 6/3/09), 11 So.3d 728.

The trial court failed to properly advise the Defendant of the prescriptive period for filing post-conviction relief.  *See* La.Code Crim.P. art. 930.8. The sentencing transcript indicates the trial court informed the Defendant that he has "two years from the date of conviction and imposition of sentence to file for post-conviction relief." Louisiana Code of Criminal Procedure Article 930.8 provides the defendant has *two years after the conviction and sentence become final* to seek post-conviction relief.  This court directs the trial court to inform the Defendant of the provisions of La.Code Crim.P. art. 930.8 by sending appropriate written notice to the Defendant within ten days of the rendition of this opinion and to file written proof in the record that the Defendant received the notice.  *State v. Roe*, 05-116 (La.App. 3 Cir. 6/1/05), 903 So.2d 1265, *writ denied*, 05-1762 (La. 2/10/06), 924 So.2d 163.

**CONVICTIONS AFFIRMED; SENTENCE VACATED; REMANDED FOR RESENTENCING WITH INSTRUCTIONS.**

This opinion is NOT DESIGNATED FOR PUBLICATION.  Uniform Rules-Courts of Appeal. Rule 2-16.3.