870 So.2d 990 (2004)
STATE of Louisiana
v.
Levi Joseph GARRICK.
No. 2003-K-0137.
Supreme Court of Louisiana.
April 14, 2004.
*991 Charles C. Foti, Jr., Attorney General, Earl B. Taylor, District Attorney, Alisa A. Gothreaux, for applicant.
Robert F. DeJean, Jr., Opelousas, for respondent.
PER CURIAM.
Although not required to do so by Louisiana law, if a prosecutor adopts an open file policy by which he or she makes the prosecution file available to the defense to satisfy the state's discovery obligations as a matter of La.C.Cr.P. arts. 717-728, and its duty to disclose material exculpatory evidence as a matter of the Due Process Clause, Kyles v. Whitley, 514 U.S. 419, 433-34, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995), defense counsel "may reasonably rely on that file to contain all materials" the state is obligated to disclose. Strickler v. Greene, 527 U.S. 263, 283, n. 23, 119 S.Ct. 1936, 1949, 144 L.Ed.2d 286 (1999).
In the present case, the court of appeal reversed respondent-defendant's conviction and sentence for armed robbery, a violation of La.R.S. 14:64, on grounds that the state did not fully and fairly comply with the open file procedure conducted with the defense and that its failure to disclose in a timely manner the exculpatory content of testimony provided by a former co-defendant turned prosecution witness at trial misled the defense and constituted "a legal defect in the proceedings of such a nature which makes the verdict reversible as a matter of law." State v. Garrick, 02-0712, p. 16 (La.App. 3rd Cir.12/11/02), 832 So.2d 1110, 1120; see La.C.Cr.P. art. 775(3). We granted the state's application to reverse that ruling because the record fails to support a finding that the late disclosure of the exculpatory evidence substantially prejudiced respondent and deprived him of a fundamentally fair trial.
The evidence at trial established that on the morning of March 27, 2001, two hooded and armed men entered the Washington State Bank in Palmetto, Louisiana, and took over $20,000. The men fled to a car parked outside occupied by respondent in the back seat. The vehicle sped away from the scene but was stopped shortly thereafter by West Baton Rouge Parish law enforcement officers. The police recovered all of the money taken in the robbery along with three sets of gloves and hoods, and three weapons, only one of which, a .45 caliber automatic, was actually loaded.
In a statement given to the police following his arrest, which the state did not introduce at trial, respondent identified the perpetrators as his friends and traveling companions, Hilton Kelly and Skyler Guidry, and claimed that he was an innocent victim of circumstances in which, on the spur of the moment after they drove into Palmetto, Kelly and Guidry decided to commit the robbery and then left him behind in the car as they walked into the Washington State branch bank. Testifying under a grant of immunity, and in return for sentencing concessions in his own case, Guidry told jurors that the three men spent the night before the robbery in a motel room in Lafayette drinking and consuming drugs with two female companions. During the evening, the men discussed robbing a drug dealer in Palmetto.
*992 At some point, either that evening, or later the next morning as they drove into Palmetto, the discussion turned to bank robbery. However, Guidry told jurors that after their vehicle circled the block around the First Washington branch several times, he and the defendant informed Kelly, who was driving, that they would not go through with the plan. Kelly brushed aside their objections and ordered Guidry out of the car. Guidry then joined Kelly in the bank because Kelly had the only loaded gun, the .45 caliber automatic, and because Kelly "has a mental problem." "I know him to go off on people before in the past," Guidry told jurors, "I didn't know what he was capable of." After the robbery, as the three men sped towards Baton Rouge, Kelly refused their repeated demands to get out of the vehicle and struggled to keep respondent's head down after ordering both men to the floor of the car as the police approached.
The state subsequently charged all three men with armed robbery and jury selection in respondent's case was completed on December 5, 2001. The court sent the jurors home with the evidentiary portions of the trial set to begin on December 13, 2001. On December 12, the state and defense filed into the record a joint stipulation acknowledging that the state had "provided a copy of the entire law enforcement agency investigative file in this matter to the defendant" in satisfaction of its discovery obligations, and had further agreed "to provide to the defense any additional law enforcement agency investigative material subsequently obtained ... [including] any exculpatory evidence discovered, irrespective of the source." The agreement specifically excepted the state's work product from the open file discovery.
However, unknown to the defense, the case file did not contain a copy of a motion submitted by the prosecutor to the Attorney General's Office on December 6, 2001, the day after jury selection concluded, seeking approval of a grant of use immunity to Guidry to compel his testimony at trial. La.C.Cr.P. art. 439.1. On the morning of December 13, 2001, after the returning jurors were impaneled and after the state filed its motion to compel signed by an assistant attorney general, the trial court conducted a hearing in chambers with respect to the pending immunity grant. Following a brief discussion with counsel, including the attorney who represented both Guidry and Kelly, the court signed the motion with the understanding that it would appoint new counsel for the co-defendants if either man testified at trial.
Proceedings then resumed in open court with the trial judge's general instructions to the jury and the state's opening remarks. At that point, the court conducted a second conference in chambers, evidently prompted by the prosecutor's report that Guidry had agreed to testify as a state witness. From the subsequent questioning of Guidry in open court, it appears that the co-defendant had met with his attorney and an investigator for the District Attorney's Office earlier that morning to discuss the immunity grant and had agreed to testify. Guidry had also provided a brief oral statement outlining the testimony he would provide the state. In the brief meeting which subsequently took place in the hallway outside the courtroom before he testified, Guidry did not discuss details of his testimony with the prosecutor but learned that the state had "sweetened the pot" with a promised sentencing cap of 25 years imprisonment at hard labor in his own case as an incentive for testifying.
Against this backdrop, the court reaffirmed its decision to grant Guidry limited use immunity and appointed new and separate counsel for both co-defendants as the *993 result of a conflict arising out of their joint representation by a single attorney. Defense counsel responded to these developments by claiming surprise and moving for a mistrial or a continuance (or, more properly, a recess, as trial had already begun with selection of a jury, see La.C.Cr.P. art. 708) "until such time that I can regroup with my client." Counsel argued that "you can't take [the motion] out of file and say here's open file...." Counsel also asserted that he had not filed for a list of the state's witnesses because he had relied on the state's open file agreement which explicitly acknowledged the state's duty to provide information "on a continuing basis." However, the state argued that the defendant was aware of Guidry's previous statement implicating respondent in the offense and further pointed out that Guidry's name appeared on the state's subpoena list which had been turned over to the defense. The trial court denied both a mistrial and a recess, and a jury subsequently found the defendant guilty as charged.
In reversing respondent's conviction and sentence, the court of appeal observed that "[f]ailure of full, good faith compliance [with open file discovery] cannot be looked upon as harmless error where the failure relates to a due process violation such as failure to divulge exculpatory evidence." Garrick, 02-0712 at 14, 832 So.2d at 1118. We have no quarrel with the court of appeal's premise that "when litigants [choose] to modify the discovery process and enter into an open file discovery agreement, it must be fully complied with in good faith." Id. However, this Court has held generally that discovery violations do not provide grounds for reversal unless they have actually prejudiced the defendant. State v. Strickland, 398 So.2d 1062, 1067 (La.1981); State v. Norwood, 396 So.2d 1307, 1309 (La.1981). Even a discovery violation involving the state's failure to disclose exculpatory evidence does not require reversal as a matter of the Due Process Clause "unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." Strickler, 527 U.S. at 281, 119 S.Ct. at 1948. Strickler observes in this regard that while "the term `Brady violation' is sometimes used to refer to any breach of the broad obligation to disclose exculpatory evidence .... [t]here are three components of a true Brady [v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) ] claim: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." Id., 527 U.S. at 281-82, 119 S.Ct. at 1948.
In the present case, the state did not actually suppress the exculpatory portions of Guidry's testimony and the prosecutor may not even have been aware of the mixed testimony his witness would present from the brief oral statement taken by his investigator shortly before Guidry appeared as the state's first witness at trial. Moreover, the state's strategy of turning one of the co-defendants in the case into a prosecution witness to increase the odds of convicting respondent arguably did not constitute part of the investigative file the state had committed itself to disclose as opposed to work product specifically exempted from the open file agreement. However, for present purposes, we assume that as part of its open file discovery the state should have provided specific notice to the defense that it had sought the approval of the Attorney General's Office for immunity to compel Guidry's testimony, that Guidry's oral statement to the state's investigator on the morning of December *994 13, 2001 anticipated the mixed testimony he would provide at trial, both implicating respondent in a conspiracy to commit armed robbery yet exculpating him on the charged offense, and that the prosecutor should have informed the defense immediately of the exculpatory content of Guidry's account of the robbery before the evidentiary portions of trial began. Even if he lacked personal knowledge of the details of Guidry's anticipated testimony, the prosecutor was charged with knowledge available to all of the members in the investigative team, Strickler, 527 U.S. at 281, 119 S.Ct. at 1948, and he had the duty to "make timely disclosure of the favorable evidence to provide the defense with adequate opportunity to present the material effectively in its case." State v. Kemp, 00-2228, p. 7 (La.10/15/02), 828 So.2d 540, 545.
Nevertheless, while late disclosure as well as nondisclosure of exculpatory evidence may deprive the defendant of a fair trial, in both instances the impact on the defense "must be evaluated in the context of the entire record." Kemp, 00-2228 at 7, 828 So.2d at 545. In the present case, defense counsel sought a continuance or mistrial to "regroup" but the record shows that the testimony subsequently provided by Guidry meshed with the defense that counsel had painstakingly explained to prospective jurors during the voir dire examination conducted a full week before Guidry testified and, apparently, before open file discovery had occurred. Counsel had emphasized in jury selection that under the law of principals in Louisiana, see La.R.S. 14:24, mere presence at the scene of the crime, and mere knowledge that a crime is about to occur, does not mean that an individual is "concerned" in, or aided or abetted, the commission of an offense, State v. Schwander, 345 So.2d 1173, 1175 (La.1977). Counsel thus asked jurors whether they would automatically vote to convict if the evidence showed that at some point respondent knew what was about to happen but remained behind in the car without attempting to run away or hitchhike. Counsel advanced this defense of "mere presence" in accord with the statement respondent had given the police shortly after his arrest.
Guidry's testimony changed the contours of that defense somewhat when the prosecutor impeached his own witness on the basis of Guidry's post-arrest statement in which he made no mention of any initial conspiracy to rob a drug dealer in Palmetto during the night of drinking and drug consumption in the Lafayette motel room. Guidry conceded on redirect that the discussion about robbing the Washington State branch bank took place in the Lafayette motel room and not as the men drove into Palmetto the next morning. However, even that concession by Guidry did not impact the core of the defense, which remained consistent from the beginning of jury selection to closing argument. In those final remarks, counsel asked jurors to consider that whatever else might have been said during the night of drinking in the Lafayette motel room, on the following morning, when respondent sobered up and found himself "over there in front of that bank that's where the tire met the road legally speaking ... this young man, said no I'm not doing it, he is withdrawing. He is withdrawing from that act that they are contemplating committing." Counsel also gave the same explanation for why respondent did not leap out of the car and run away that Guidry gave in his testimony. "Who is the only man with the bullets in the gun," counsel reminded jurors, "The testimony you heard was Kelly was the only man with bullets in the gun."
The record therefore shows that defense counsel integrated Guidry's unanticipated *995 testimony into his overall defense according to legal principles discussed with prospective jurors at the outset of the case. Counsel had deferred his opening statement to the defense case-in-chief and had therefore not made any specific evidentiary claims that Guidry's testimony then undercut. Counsel had additionally prepared a special requested instruction on the defense of withdrawal from a conspiracy. The instruction drew on this Court's decision in State v. Lobato, 603 So.2d 739, 746 (La.1992), which observed that ("[t]o prove withdrawal, a defendant must show affirmative actions made by him which are inconsistent with the object of the conspiracy.... Such affirmative actions include... notification to the co-conspirators of abandonment or withdrawal."). The trial court ultimately declined to give the instruction but gave counsel free rein to argue the concept of withdrawal from a conspiracy as part of a defense that respondent had been merely present at the scene of the bank robbery and therefore not concerned as a principal in the commission of the offense.
The record thus shows that the trial court's denial of a mistrial or a postponement of the evidentiary portions of trial did not prejudice the defense or otherwise render the proceedings fundamentally unfair. The Third Circuit's decision is therefore reversed and this case is remanded to the court of appeal for consideration of the remaining assignments of error pretermitted on original hearing.
DECISION OF THE COURT OF APPEAL REVERSED; CASE REMANDED.