McClendon, j.
|2The defendant, Ronald Gross, was charged by bill of information with molestation of a juvenile (thirteen years or older but not yet seventeen), a violation of LSA-R.S. 14:81.2. The defendant pled not guilty and waived his right to a jury trial. The trial court adjudged the defendant guilty as charged. The defendant was sentenced to one year of imprisonment at hard labor. The defendánt now appeals, designating four assignments of error. For the following reasons, we affirm the conviction, but we vacate the one-year sentence and remand this matter to the trial court for resentencing.
FACTS
A.D. had just recently learned that the defendant was her biological father and had started staying at the defendant’s house in Tickfaw on summer weekends. On June 3, 2012, A.D., who was sixteen years *1092 old at the time, and her friend, A.H. (a seventeen-year-old female), slept over at the defendant’s house. A.D.’s half-sister, A.G. (around nine years old at the time), was also at the house that night.[1] At about 8:00 p.m., all three of the girls were in the defendant’s bedroom, with the defendant, watching television. The defendant and A.D. were lying on the bed. A.D. was wearing pajama shorts and a sports bra. At some point, A.H. got a call on her cell phone and left the room. Shortly thereafter, A.G. also left the bedroom.
According to the testimony of the victim, the defendant then began rubbing A.D.’s back. The defendant moved his hand inside of A.D.’s shorts and began rubbing and grabbing her buttocks. The defendant pulled out his penis, pulled down A.D.’s shorts, and pulled A.D. close to him so that his penis was on her stomach. A.G. came back into the bedroom to get the defendant’s cell phone. When A.G. left the bedroom, A.D. got off the bed and also left the bedroom. A.D. went to a back room, looking for her friend and little sister. Realizing no one was in that room, A.D. headed for the kitchen, which required her to pass by the defendant’s bedroom. As A.D. passed his room, the defendant grabbed her and tried to take her into the “bible study” room, but |aA.D. resisted. The defendant then pulled A.D. back into his bedroom, bent her over his bed, and started kissing her and licking her neck. A.G. again walked into the bedroom and handed the defendant his cell phone due to his receiving a call.
A.D. left the bedroom and found A.H. in the kitchen. A.D. took A.H. outside and told her what had just happened. AD. called her ■ mother, and A.H. called the police, who arrived shortly thereafter. The defendant testified at trial and denied the allegations and any wrongdoing.
ASSIGNMENT OF ERROR NO. 1
In his first assignment of error, the defendant argues the trial court erred in denying his motion for a mistrial. Specifically, the defendant contends he was entitled to a mistrial because of the prosecutor’s reference to acts of molestation, other than the acts that occurred initially, in her opening statement.
The defendant had been a bailiff for the 21st Judicial District Court. Accordingly, the Tangipahoa District Attorney’s Office recused itself from this matter. The Attorney General’s Office took over and prosecuted the case. In part of her opening statement, the prosecutor described the few moments when the defendant allegedly molested his daughter A.D. In particular, the prosecutor stated:
He touched her in her vaginal area. He removed his penis and displayed that to [A.D.] and he tried to engage her in sexual intercourse. When she got up and walked away, he pursued her and tried to engage her in inappropriate lewd and lascivious acts a couple of more times while they were in the house. She was able to divert him. She was able to get away from him.
At the conclusion of the prosecutor’s opening statement, defense counsel objected to the prosecutor’s alleged references to other crimes evidence for which defense counsel had been provided no notice. According to defense counsel, in addition to the defendant’s touching A.D. in the vaginal area and exposing his penis—the alleged facts that defense counsel knew about—the prosecutor “referenced a cou- *1093 pie of other situations that apparently happened either outside of that location and somewhere else in the house or are supplemental and additional acts of alleged criminal conduct.”
To this allegation, the prosecutor responded:
14Your Honor, in my opening statement I made reference to him pursuing her in other rooms after the initial incident that took place in the bedroom. I have no intention of introducing anything that was not included in the discovery that was provided. She spoke to the police officers about him pursuing her in other rooms. She also spoke in the police report about the fact that she had gone to her friend immediately afterward and what she told her friend.
The trial court noted defense, counsel’s objection and informed him the court will “listen to the evidence and we’ll cross that bridge when we get to it.”
We note initially that defense counsel did not move for a mistrial. He merely objected to what he alleged was reference to other crimes evidence that he had not been provided in discovery. In her opening statement, however, the- prosecutor explained A.D.’s movements throughout the house as she tried to get away from the defendant who kept grabbing her. In other words, the prosecutor described a continuous transaction of events that lasted a few minutes at most and constituted a single event of molestation of a juvenile. Thus, even if the prosecutor in her opening statement had referenced other specific acts of the defendant, which she did not, such other crimes evidence would have been admissible as conduct that constituted an “integral part” of the act or transaction, and for which the defendant was not entitled to notice. See LSA-C.E. art. 404(B)(1); State v. Craddock, 435 So.2d 1110, 1117-18 (La.App. 1 Cir. 1983) (finding the acts of the defendant immediately before and after the death of the victim, which occurred within a span of 30 to 45 minutes, established events comprising the res gestae and, as such, no notice was required and the evidence was properly admitted). See also State v. Qdenbaugh, 10-0268 (La. 12/6/11), 82 So.3d 215, 250-52, cert. denied, 568 U.S. 829, 133 S.Ct. 410, 184 L.Ed.2d 51 (2012); State v. Taylor, 01-1638 (La. 1/14/03), 838 So.2d 729, 740-45, cert. denied, 540 U.S. 1103, 124 S.Ct. 1036, 157 L.Ed.2d 886 (2004).
Finally, we note that the only allegation as to other crimes evidence'was regarding the prosecutor’s comments made in her opening statement during a bench trial, and no other crimes evidence was introduced at trial. Accordingly, the defendant has shown no prejudice. A judge, unlike a jury, by virtue of the judge’s training and knowledge of the law is fully capable of disregarding any impropriety. State v. Anderson, 02-273 (La.App. 5 Cir. 7/30/02), 824 So.2d 517, 521, writ denied, 02-2519 (La. 6/27/03), 847 So.2d 1254, See State v. Mahogany, 07-360 (La.App. 5 Cir. 10/30/07), 970 So.2d 1150, 1155-57.
For the foregoing reasons, this assignment of error is without merit.
ASSIGNMENTS OF ERROR . NOS. 2 and 3
In these related assignments of error, the defendant argues, respectively, the trial court erred in denying his motion for mistrial and his motion for continuance, both for the State’s failure to turn over potentially exculpatory evidence, namely the Children’s Advocacy Center (CAC) tape.
It is well settled that the State has an affirmative duty to disclose exculpatory evidence favorable to the defendant. Brady v. Maryland, 373 U.S. 83, 86-87, 83 S.Ct. 1194, 1196-97, 10 L.Ed.2d 215 (1963). *1094 But in order to prove a Brady violation, the defendant must establish, inter alia, that the evidence in question was, in fact, exculpatory or impeaching. State v. Garrick, 03-0137 (La. 4/14/04), 870 So.2d 990, 993 (per curiam). Disclosure of exculpatory evidence should be made in time to allow a defendant to make effective use of such information in the presentation of his case. State v. Prudholm, 446 So.2d 729, 738 (La. 1984). In order to be entitled to a reversal for failure to timely provide exculpatory information, the defendant must show that he was prejudiced. Discovery violations do not provide grounds for reversal unless they have actually prejudiced the defendant. Garrick, 870 So.2d at 993.
A mistrial may be ordered when there is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law. LSA-C.Cr.P. art. 775(3). A mistrial is a drastic remedy which should only be declared upon a clear showing of prejudice by the defendant. In addition, a trial judge has broad discretion in determining whether conduct is so prejudicial as to deprive an accused of a fair trial. State v. Smith, 418 So.2d 515, 522 (La. 1982). See State v. Berry, 95-1610 (La.App. 1 Cir. 11/8/96), 684 So.2d 439, 449, writ denied, 97-0278 (La. 10/10/97), 703 So.2d 603. A reviewing court in Louisiana should not reverse a defendant’s conviction and sentence unless the error has affected the substantial rights of the accused. See LSA-C.Cr.P. art. 921.
Detective Beth Russell, with the Tangi-pahoa Parish Sheriffs Office, was the lead | ^detective on A.D.’s case. On cross-examination at trial, Detective Russell testified that she had interviewed A.D. and recorded the interview. Defense counsel learned from Detective Russell on cross that A.D. had undergone a forensic interview at the CAC on June 21, 2012. Detective Russell explained that because of A.D.’s age—over the age of fourteen—there would be an audio recording of the interview. However, the detective did not have the CAC interview and further informed defense counsel that the interview had not been transcribed. According to Detective Russell, “[t]hat was around the point in time that the Sheriffs Office quit transcribing the tapes.” The CAC tape, thus, was not in possession of the State, but was still with the transcriber.[2] Detective Russell did not reference the CAC interview in any of her reports.
At this point, defense counsel moved for a mistrial. He argued that the CAC tape “clearly had evidentiary value” and that he was not provided the tape in discovery, despite his request. Defense counsel contended he had a right to know of the existence of the CAC tape and then to “have an opportunity to examine it in preparation for cross-examination of the alleged victim in this case.”
The prosecutor responded:
Your Honor, at the time that discovery was propounded upon the State, we provided everything that we had in our possession. The State has no copy of a CAC transcript in its record. We have no copy of any type of recording from them in our file. We have no intention of calling anyone from [the CAC] to the stand today at trial. I mean, the defense indicated that they were satisfied with the discovery that they were provided with at the time that we provided discovery. I would object to the mistrial, motion for mistrial.
Defense counsel replied:
*1095 Judge, and in no way, shape or form am I trying to lay blame, and I certainly don’t blame the State because if they weren’t aware of it they can’t give it to me. But there is an analogy here it’s kind of like asking the fox to guard the hen house. Even though they don’t know about it, if law enforcement knows about it and they do not disclose it to the State and in particular it is an item of substantive evidence such as a CAC tape, then unfortunately the State has to bear the negative inference of that and in this case I think the only appropriate remedy is that of a mistrial. It could have affected our entire approach in this case. My client waived a jury on the basis that we didn’t have such a tape. And maybe the State doesn’t intend to use it in lieu of the testimony of the victim, but that’s not the only issue because the Code of Criminal Procedure says either side may present that tape into evidence. But we can’t present it if we haven’t had |7a chance to review it and if we haven’t had a chance to determine whether it contains exculpatory information and to use it in preparation for cross-examination of the victim.
(R. p. 69)
The trial court saw no need to grant a mistrial, but suggested he may grant a continuance to allow defense counsel to obtain a copy of the CAC tape and to listen to or view it. The trial court then granted about a 90-minute recess to allow Detective Russell to obtain the CAC tape. The trial court then stated:
And if it is, bring it here, and then maybe we can play it. Depending upon what’s on that disc, if you think we should continue the trial to another date, we can do it. Maybe you can listen to that disc and feel comfortable with whatever is on it. I don’t know. I don’t know what’s on it and you don’t either.
The following exchange then took place between defense counsel and the trial court:
[Defense Counsel]: Judge, and this is where it gets into a cumulative effect. I’ve just this morning.got the transcript of the defendant’s statement and the transcript from Children’s Hospital. And now with the CAC tape, I need additional time to make comparisons particularly with reference to the Children’s Hospital and the CAC tape and statements given to this detective by the alleged victim to search for inconsistencies if they exist so that I have the ability to adequately and effectively cross-examine the victim when she takes the stand. So with all due respect, Your Honor, I need more than a few hours.
THE COURT.: I don’t think it’s unreasonable. I know that you are both ready. I’m just seeing if there is someway that I can accommodate y’all. and at the same time get this matter disposed .of, b.ut obviously I don’t want , to prejudice the rights of your client. Let’s start by. coming back at 1:16. You try to get the disc. I still want you to listen to it. Then upon if you still feel the same way, and I don’t know what y’alls schedule is, I’m here for the whole week. I would be more than happy to give you a day’s recess if that’s what you need to compare it, or if it is unreasonable in light of your 'schedule, then we’ll just simply reset it. But why don’t we start by getting that disc here and see what the young lady had to say, then I’m going to let you make the call as to whether or not we should reset it for Thursday or reset it for a couple of months from now.
Based on the foregoing exchanges, it is clear that the trial court was more than accommodating to defense counsel regarding receipt and review of the CAC tape. At one point, the trial court went so far .as to *1096 allow a continuance for months if the situation dictated such a remedy. In any event, the CAC tape was obtained later that same day. Testimony was concluded for the day, and the trial court informed defense counsel that if he wished he could use the court’s equipment to view the CAC interview. IsThey would then resume trial at 9:30 a.m. the next day.
The following morning, October 15, 2014, the trial court asked counsel if they viewed the CAC tape. Although he could not hear the tape, defense counsel informed the court that he viewed it, and that he did not know if he would introduce it because he did not “know what value it would be,” but he reserved his right to introduce it. Trial then resumed.
Thus, despite the trial court’s assurance that defense counsel could continue the matter if he needed more time, defense counsel, after viewing the CAC tape, chose not to introduce it into evidence, even for impeachment purposes. Accordingly, by the defendant’s own admission, there was nothing exculpatory on the CAC tape.
Moreover, even if the tape did contain exculpatory or, more particularly, impeachment evidence, the defendant failed to show how he was prejudiced in any way. A discovery violation involving the State’s failure to disclose exculpatory evidence does not require reversal as a matter of the Due Process Clause unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict. Garrick, 870 So.2d at 993. While late disclosure, as well as nondisclosure, of exculpatory evidence may deprive the defendant of a fair trial, in both instances the impact on the defense “must be evaluated in the context of the entire record.” State v. Kemp, 00-2228 (La. 10/15/02), 828 So.2d 540, 545 (per cu-riam).
There was no evidence, including the CAC tape, submitted on appeal for this court to review. Defense counsel’s decision not to even introduce the CAC tape at trial suggests there was nothing in A.D.’s interview that tended to establish the defendant’s innocence. Arguably, if the CAC tape contained evidence with impeachment value, the State’s initial failure to turn over any tape to the defense may have constituted a discovery violation. However, even where disclosure is made during trial, it will be considered timely if the defendant is not prejudiced. State v. Huls, 95-0541 (La.App. 1 Cir. 5/29/96), 676 So.2d 160, 170, writ denied, 96-1734 (La. 1/6/97), 685 So.2d 126. Moreover, any ostensible dis covery violation did not result in actual prejudice to the defendant and, as such, there were no grounds for reversal. See Garrick, 870 So.2d at 993. The disclosure that the CAC interview had not been transcribed and that the State had never been in possession of the CAC tape was revealed minutes into the testimony of the first witness. Also, A.D. was called to the stand to testify, and defense counsel was afforded the opportunity to vigorously cross-examine her. Cf. State v. Barker, 628 So.2d 168, 176 (La.App. 2 Cir. 1993), writ denied, 93-3194 (La. 3/25/94), 635 So.2d 236.
Accordingly, the disclosed, albeit late, CAC tape did not constitute material evidence. See State v. Marshall, 94-0461 (La. 9/5/95), 660 So.2d 819, 825-27. Favorable evidence is material, and constitutional error results from its suppression by the government, “if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.” United States v. Bagley, 473 U.S. 667, 682, 685, 105 S.Ct. 3375, 3383, 3385, 87 L.Ed.2d 481 (1985). A “reasonable proba *1097 bility” is a probability sufficient to undermine confidence in the outcome. Bagley, 473 U.S. at 682, 105 S.Ct. at 3383. See State v. Smith, 95-1826 (La.App. 1 Cir. 9/27/96), 681 So.2d 980, 992, writ denied, 96-2568 (La. 3/27/97), 692 So.2d 390.
Brady and its progeny do not establish a general rule of discoverability. A prosecutor does not breach his constitutional duty to disclose evidence unless the omission is of sufficient significance to result in the denial of the defendant’s right to a fair trial. The mere possibility that an item of undisclosed information might have helped the defense or might have affected the outcome of the trial does not establish “materiality” in the constitutional sense. State v. Sparks, 88-0017 (La. 5/11/11), 68 So.3d 435, 486, cert. denied sub nom, 566 U.S. 908, 132 S.Ct. 1794, 182 L.Ed.2d 621 (2012).
Based on the foregoing, we find the defendant has failed to show that he was prejudiced in any way or that the proceedings were somehow rendered fundamentally unfair by the late disclosure of the CAC tape interview. See State v. Pitre, 04-0545 (La.App. 1 Cir. 12/17/04), 901 So.2d 428, 441-42, writ denied, 05-0397 (La. 5/13/05), 902 So.2d 1018. Had such evidence of the CAC interview been disclosed prior to trial instead of at the beginning of trial, we are convinced that the result of the proceeding 1 mwould not have been different. See Bagley, 473 U.S. at 682, 685, 105 S.Ct. at 3383, 3385.
The defendant has not established a viable Brady claim and, as such, we find no abuse of discretion in the trial court’s denial of either the motion for mistrial or the motion for continuance. Accordingly, these assignments of error are without merit.
ASSIGNMENT OF ERROR NO. 4
In his fourth assignment of error, the defendant argues the trial court erred in denying his motion for a new trial. The defendant asserts he should have been granted a new trial because new evidence (the CAC tape) was presented the day of trial. Further, according to the defendant, he was not able to knowingly waive a jury trial because of his lack of knowledge of the CAC tape.
Louisiana Code of Criminal Procedure article 851(3) provides that a new trial shall be granted whenever “[n]ew and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty.” The decision of whether to grant or deny a motion for new trial is within the trial judge’s sound discretion. State v. Brisban, 00-3437 (La. 2/26/02), 809 So.2d 923, 931.
The issue regarding the CAC tape being made available to defense counsel on the first day of trial has already been addressed in full in the second and third assignments of error. As such, and especially in light of the fact that defense counsel viewed the CAC tape and chose not to use it, introduce it into evidence, or ask for a continuance, the defendant was not entitled to a new trial because of the late disclosure of the CAC tape.
In his written motion for a new trial, the defendant argued that possible exculpatory evidence, the CAC tape, was not turned over until after trial began. The defendant made no argument in his written motion about not knowingly waiving his right to a jury trial; defense counsel raised this issue for the first time at the post-trial hearing on the motion for new trial. The defendant also argued in his written motion for a new trial that the ends of justice would be served by the granting of a new *1098 trial Inunder LSA-C.Cr.P. art. 851(5) (now 851(B)(5) since the 2014 amendment).
In addressing the jury trial waiver issue at the motion for new trial hearing, the trial court stated in pertinent part:
So I appreciate the position of [defense counsel]. However, I also appreciate that he did the appropriate job when he defended Mr. Gross in this matter. It’s.kind of hard for me to weigh in on the waiver of the trial by jury in the disclosure of this matter. This matter could have been disclosed on the 43rd day before trial and maybe this would not have been an issue but—at the time of the trial. So I don’t know.
■ I know [defense counsel], because he is a seasoned defense attorney, -makes all of those things an issue because that’s what a good attorney does, and I cannot second guess whether the disclosure of those impeachable materials would have affected his right to waive .the trial by jury. My guess would be, no, only because of the fact that all of us know how difficult alleged abuse of a child is ip front of a jury. It’s just a difficult matter to try.
But, anyway, regardless, it’s going to •be my position that the motion for a new trial will be denied because of all the comments that I’ve made.
We see no reason to disturb the ruling of the trial court. Clearly, tactical reasons may have existed for the defendant to seek to have his case, which involved the alleged sexual abuse of his own daughter, tried by a judge as, opposed to a jury. Defense counsel’s assertion at the motion for new trial hearing that had he known of the CAC interview, his client would not have waived his right to a jury trial was unsubstantiated and lacked any evidentiary support. At a pretrial hearing on April 2, 2014, defense counsel engaged the defendant in a colloquy on his wish to waive his right to a jury trial:
The Court: Counsel, we’ll set this matter for October 14th trial week.
Mr. Gros [sic], if you would step to the mic. Raise your right hand, face the deputy clerk, and take the oath.
RONALD GROS [sic], Who after first being duly sworn by the Deputy Clerk of Court, did testify as follows:
By [Defense Counsel]:
Q. Would you state your name.
A. Ronald Gros [sic],
Q. And you are the defendant in this matter, correct?
A. Yes, sir.
Q, You have indicated to me that it is your desire to waive your right to a jury trial and proceed with a bench trial, correct?
A. Yes, sir.
Q. I have represented you through the entirety of these proceedings, correct?
A. Yes, sir.
Q. I have explained to you the pros and cons of a trial by jury?
haA. Yes, sir.
Q. As well as a trial by judge.
A. Yes, sir.
Q. You have on your own initiative asked me to waive or indicate to the Court that you are waiving a jury in this case?
A, Yes, sir.
Q. You understand that you have a right to a trial by a jury?
A. Right.
Q. In this particular case the charges in this case you are entitled to a trial by a six-member jury, all of which must concur. In other words, a unanimous verdict in order to convict you, do you understand that?
A. Right.
*1099 Q. And a 12-person jury only 10 of 12 must agree.
A. Right.
Q. If you waive that jury your case will be decided by one person and that one person alone, and that, of course, is Your Honor, Judge Ricks.t[3]]
A. Yes. Right.
Q. Have I advised you of all of your legal and constitutional rights in this case?
A. You have.
Q. Have I discussed the merits of the case with you? •
A. You have.
Q. And based upon those discussions it is your choice to waive the jury?
A. Yes, it is.
Q. You are doing this freely and voluntarily?
A. Yes, sir.
Finally, we note that when procedural rules are properly followed, the grant or denial of a new trial based on LSA-C.Cr.P. art. 851(B)(5) will rarely be disturbed on appeal. See State v. McKinnies, 13-1412 (La. 10/15/14), 171 So.3d 861, 874. Following our review of the record, we conclude that the trial court acted within its wide discretion in denying the defendant’s motion for new trial.
This assignment of error is without merit.
SENTENCING ERROR
In conducting our review of the record as required by LSA-C.Cr.P. art. 920(2), we note the existence of a sentencing error. The defendant was sentenced to one year of imprisonment. Under either of the applicable sentencing statutes, the sentencing range was not less than five years nor more than ten years; or not less than five years nor more than twenty years. See, respectively, LSA-R.S. 14:81.2(B)(1) and LSA-R.S. 14:81.2(B)(2) (when the offender has control or supervision over the juvenile). The defendant’s one-year sentence is, therefore, illegally lenient.
11sUnder the general provisions of La. Code Crim, P. art. 882(A), an illegal sentence may be corrected at any time by an appellate court on review. The sentencing herein, however, involves discretion. To the extent that amending the defendant’s sentence entails more than a ministerial correction of a sentencing error, a sua sponte correction by a court of appeal is not sanctioned by the jurisprudence. See State v. Haynes, 04-1893 (La. 12/10/04), 889 So.2d 224 (per curiam). Because of the sentencing discretion involved, we vacate the sentence and remand for resentencing. The trial court should specify which sentencing provision is applicable (LSA-R.S. 14:81.2(B)(1) or (B)(2)) and resentence the defendant accordingly.
CONCLUSION
For the foregoing reasons, we affirm the defendant’s conviction, vacate the defendant’s sentence, and remand this matter to the trial court for resentencing in accordance with the applicable law.
CONVICTION AFFIRMED; SENTENCE VACATED; REMANDED FOR RESENTENCING IN ACCORDANCE WITH APPLICABLE LAW.

. The three minor (at the time of the crime) females are referred to by their initials. See LSA-R.S. 46:1844(W).

. Detective Russell initially testified that she was present at the CAC interview, but later realized she was not present, and testified to such.

. At the time of trial, Judge Gaidry was appointed to serve ad hoc due to the recusal of all judges of the Twenty-First Judicial District Court. A motion for recusal was filed based on the defendant's previous employment as a bailiff at said court.